GRIDER V. DRIVER.

1. USURY: *Taking new note for principal and interest of old one.*
   It is not usury to add the interest on several notes to the principal, and then add to this sum the interest on it at 10 per cent. per annum for one year, and then take a new note for this last sum payable one year after date, with interest at 10 per cent. per annum after maturity, in payment of the old notes.

2. SAME: *Selling property on credit.*
   It is not usury for one to sell property on a credit for a higher price than he would have sold for cash, with legal interest added; but if the sale be really made on a cash estimate and time be given to pay the same, and an amount is assumed to be paid greater than the cash price with legal interest would amount to, this is an agreement for forbearance that is usurious.

3. SAME: *Relief in equity.*
   A plaintiff will not be relieved in equity from a usurious contract except upon condition that he pays the principal and legal interest.

4. SAME: *Presumption of laws of another state.*
   Although it will be presumed in many cases, in the absence of a contrary showing, that the laws of other states are the same as our own, the presumption will not be indulged where our laws impose a penalty or work a forfeiture as in the case of usury.

APPEAL from *Mississippi* Circuit Court in Chancery. Hon. J. G. FRIERSON, Circuit Judge.

*U. M. & G. B. Rose,* for appellants.

Having procured all these claims, appellee Driver proceeded to secure them in a very singular way. He did not, like any one else would have done, take a mortgage with interest from date until paid. He calculated the interest on all the claims at the rate of 10 per cent. up to the date of the execution of the mortgages, and added this interest to the principal. He then calculated the interest on this gross sum up to the date of the maturity of the mortgages, added this to his former amount, and then made the mortgages, with all these accumulations of interest upon interest, to bear interest from maturity until paid at the rate of 10 per cent. This, of course, amounted to a contract to pay interest upon interest subsequently to accrue; and when we consider that many of the notes going to make up the amounts of the trust deeds had been originally taken in this very ingenious manner, it will be seen that the practical operation has been to extort the most enormous rates of interest.

In cases of this kind, where there is evidently power and oppression on one side, and weakness and suffering upon the other, courts of equity delight to interfere, and to see that the oppressor gets only even-handed justice.

It was settled at a very early day, and has been confirmed by numerous subsequent decisions, that equity will not uphold transactions such as that of the defendant in this case. It is not usurious, according to the more recent decisions, to compound interest, provided the rests are not so frequent as to indicate an intention of evading the usury laws. But the compounding must be upon interest already accrued. The parties cannot stipulate that interest subsequently to accrue shall be compounded. Such a stipulation is in the nature of a penalty, and will be deemed void in equity. The damages allowed by law for a failure to pay

money when due is the lawful interest, and any promise to pay more than that is regarded as an extortion on the part of the creditor, and will be held invalid.  *Tyler on Usury*, *p. 241; 11 Paige, 231; 1 Barb., 632; 1 Johns. Chy., 14; 17 Conn., 247, 4 Rand., Va., 408; 6 Johns. Chy., 313; 21 Mo., 432; 2 La. Ann., 241; 17 How. Pr., 255; Mowry v. Bishop, 5 Paige, 101.*

*Second*—Driver, who was not a merchant, and who only kept a little store-house on his plantation for the supply of his own hands, bought goods for Miss McGavock.  They were ordered by him from parties in Memphis and St. Louis, and were shipped directly to her.  The bills were sent to Driver.  He added 20 per cent. to them, and put them into the mortgages.  The real effect of the transaction was, that Miss McGavock borrowed the amount from Driver, giving him by way of interest 20 per cent. of the sum.  This was usury.

The same vice tainted the simulated purchase by Miss McGavock of a lot of scrip worth 80 cents on the dollar, but which Driver put into the trust deeds at par.

Parties are very ingenious in their devices to cover usury, and one of their oldest and best known shifts is a sale, or pretended sale, of property at an extravagant profit.  All such proceedings are condemned in equity.  *Ford v. Hancock, 36 Ark., 248; Tyler on Usury, 300.*

*Third*—The evidence is conflicting as to whether the claim of Shoemaker, Joplin & Co. has been paid or not. If the rule laid down in *Johnson & Goodrich v. Anderson, 30 Ark., 745,* and *Hughes v. Johnson, 38 Ark., 285,* that payments are to be imputed to the earliest items of the account, be followed, then the debt which Shoemaker, Joplin & Co. undertook to assign to Driver had been satisfied.

*Greer & Adams*, also, for appellants.

What is usury? It is the taking of more interest for the use of money than the law allows; or the extortion of a sum beyond what is lawful. *Tyler on Usury, 35.* The policy of usury laws is to protect necessity against avarice. *Tyler on Usury, 58.*

Driver alleges, and attempts to prove, that if he exacted more than the legal rate of interest, it was unintentional; but the supposed right to exact more than the legal rate of interest is no excuse, and makes the taker guilty of usury. *Tyler on Usury, 275; Bank v. Butts, 9 Mass., 49; German Bank v. DeShon, 41 Ark., 331.*

The note discounted must be a present subsisting liability, and if the rate of discount be greater than allowed by law, it will be usury. *Tyler on Usury, 282-3-4; Hall v. Earnest, 36 Barb. (N. Y.), 585.*

And if a money lender discounts a note for a greater rate than allowed by law and holds the indorser bound, it is usury. *Tyler on Usury, 338-39 to 350; Ruffin v. Armstrong, 2d Hawks (N. C.), 411; Bellinger v. Edwards, 4th Ird. Eq. (N. C.), 449; Newell v. Doty, 33 N. Y., 83-94-5.*

Ten per cent. interest payable *semi* annually is usurious. *22 Ark., 413.* All parties who participated in the original consideration can never be considered innocent holders. *17 Johns. (N. Y.), 176; 5 ib., 55; Dan. Neg. Inst., sec. 750-1, vol. 1, 1st ed.; 8 Cow. (N. Y.), 689; 41 Ark., 331.* If the original transaction was tainted with usury, no matter how many renewals, it carries its death wound with it. *Tyler on Usury, 346, 347; 32 Ark., 346.*

The testimony also shows that some of the Edrington notes were not merged in the deeds of trust until after they were due; and whilst they bore 10 per cent. interest on their face from date, they do not specify that they should draw that rate of interest until paid. Consequently, after

due they only drew 6 per cent. interest, and Driver had no right to charge 10. per cent. interest, which he did after maturity. *Gardner v. Bennett, 36 Ark., 476; Newton v. Kennedy, 31 Ark., 626; Pettigrew v. Sumners, 32 Ark, 571; Woodruff v. Webb, 32 Ark., 612.*

The deed of trust executed on the 19th day of April, 1881, was given to secure, among other items, about $400 in Mississippi county scrip, worth at the time about 80 cents on the dollar, which Mrs. Grider agreed to pay for at par on consideration of an extension of time, or in other words at the maturity of the deed of trust. No provision is made for repayment in scrip, but on the contrary, it was agreed that Mrs. Grider was to pay in money, dollar for dollar. This device is frequently resorted to by "hardfisted" usurers, and is unquestionably usurious. *Gregory v. Bewly, 9 Ark., 22; Ford v. Hancock, 36 Ark., 248.*

Another item in said last-named trust deed is an *open* account for plantation supplies, which was, in fact only, $1,729.50. To this was added 20 per cent., and 10 per cent. interest. This is usury on usury. If interest is charged on a bill of goods from date of sale, when the sale is made on time, it is usury. *35 Ark., 52.*

The Shoemaker deed of trust was paid in cotton. It was a sale of specific property for a specific debt, and the proceeds could not be diverted without the consent of Mrs. Grider in writing by an instrument of equal dignity as that of a deed. *Johnson v. Anderson, 30 Ark., 745; Hughes v. Johnson, 38 Ark., 285; Price v. Dowdy, 34 Ark., 285; Williams v. Williams, 11 Heisk., 95; Hooper, ex parte, 19 Vesey, 477; Whiting v. Beebe, 12 Ark., 428; Nolley v. Rodgers, 22 Ark., 227; Benjamin on Sales, 148.*

The law will not sanction any combination whereby more than 10 per cent. is exacted. *18 Ark., 456.* The act

of February 9, 1875, p. 146, is unconstitutional. *41 Ark.*, *331.*

*O. P. Lyles & H. M. McVeigh*, for appellees.

Usury is charging *unlawful* interest, or a *greater rate* than is allowed by law. *36 Ark., 484.* The *compounding* of interest is neither *usurious* nor contrary to law, as for instance:

A new note, with interest at 10 per cent., for several small notes, with interest calculated and included *is not* usury. *6 Ark., 463; 2 Parsons Bills and Notes, 423; 1 Cold., 223.* Nor a note for an account and 10 per cent. interest, with 10 per cent. interest from date. *36 Ark., 569.*

Six years' back interest added in face, is not usury. *4th Pick., 173; Tyler on Usury, 155.*

Our own courts compound interest in the rendering of their judgments and decrees, by giving judgment for the principal and interest to date of judgment, and then interest on the aggregate amount from the date of the judgment until paid.

Now, nowhere have appellants produced one particle of proof throughout the whole of their voluminous testimony to establish any usury in any of the transactions or items of indebtedness embraced in any of said six several trust deeds.

Compound interest is not usury. And the fact that Driver bought some of these claims from third parties, that went to make up his indebtedness, *at a discount*, certainly cannot taint his transactions with usury. See *Tyler on Usury, 126, 127; 2 Parsons on Bills and Notes, 426, 407.*

The only two semblances of usury made out by appellees in their whole case, are:

*First*—In the matter of the Sue J. McGavock and C. L.

Moore note (balance) for $133.32, that went into the consideration of the trust deed of September 14, 1880 ; and,

*Second*—In the matter of the 20 per cent. profit charged by appellee in the trust deed of April 19, 1881, for the advances made by him to the appellants.

Properly examined, however, neither of these transactions contain any usury. *Parsons on Bills and Notes, 407; ib., 132.*

As to the 20 per cent. profit on the goods charged, it was his *profit* for making advances and forbearance in selling on credit. It is not usury to sell goods on credit for a higher price than they would bring for cash and legal interest added. *36 Ark., 248; 8 Hump., 489.*

Mrs. Grider induced Driver to purchase the Edrington note and the Shoemaker, Joplin & Co. note. She must have known whether the notes were usurious or not. She encouraged Driver in the purchase, and if there was usury she concealed it from him, and she is therefore estopped. *1 Greenleaf on Ev., par. 207, 208 and 22'; McLean v. Cutler, 5 Ark., 13; Walker v. Johnson, 13 Ark., 522, 533.*

BATTLE, J.   This action was brought by appellants, Sue M. Grider and W. H. Grider, her husband, in the Mississippi circuit court, to restrain John L. Driver, as trustee, from foreclosing six several deeds of trust given by appellants on a large body of land in Mississippi county, to secure certain debts mentioned in the deeds.

1. Not usury.   On the 1st day of May, 1879, James D. Driver was the owner of five notes executed by Sue M. Grider, then Sue M. McGavock, to different parties and for different amounts. All of these notes were bearing interest, except one for the sum of $3,133.35, which was due on the 1st day of October, 1879, and bore 10 per cent. interest from maturity until paid. He loaned her $233. According to an agreement

Grider v. Driver.

made with her, he calculated the interest on all these notes then bearing interest down to the 1st day of May, 1879, and then added all the principals of the notes then bearing interest, and the interest so calculated thereon and the $233 cash loaned, and on the sum total thereof calculated interest at 10 per cent. from the 1st day of May, 1879, to the 1st day of May, 1881, and calculated the interest on the note for $2,133.35 from the 1st day of October, 1879, the day when it commenced bearing interest, down to the 1st day of May, 1881, and added this interest, and the $2,133.35, said sum total and interest calculated thereon, making the sum of $5,514.57; and Miss McGavock executed her note to Driver for this amount, due the 1st day of May, 1881, and bearing 10 per centum per annum interest from maturity until paid, and executed the first of the six deeds of trust to secure the payment thereof. This deed in trust and the note secured thereby were delivered to, and received and accepted by Driver in payment and satisfaction of the notes held by him, which were surrendered to Miss McGavock.

On the 17th day of February, 1880, James D. Driver held and was the owner of a note executed by Miss Mc-Gavock, now Mrs. Grider, to Stowell & Heintz for $224.40, bearing 10 per cent. interest from the 1st day of June, 1879, until paid. Miss McGavock was also indebted to Driver for cash loaned on the 19th day of September, 1879, in the sum of $225. He loaned her the further sum of $1,000, and paid for her $6 for conveyances made by her. He then calculated the interest on the Stowell & Heintz note, and the sums of cash loaned and paid, at the rate of 10 per cent., in the same manner he did in taking the first deed in trust, making the amount due thereon, on the 17th day of February, 1881, $1,628.59; and Miss McGavock executed her note for this amount, bearing date the 17th day

Not usury.

of February, 1880, due on the 17th day of February, 1881, and bearing 10 per cent. interest from maturity until paid, and executed the second of the six deeds in trust to secure the payment thereof. This deed in trust and the note secured thereby were delivered to Driver, and all the evidences of the indebtedness incorporated in the new note were by him delivered to Miss McGavock.

Not usury. On the 20th day of March, 1880, appellants borrowed of James D. Driver the sum of $2,500 for one year; agreed to pay him for the use thereof interest at the rate of 10 per cent. per annum, and executed to him their note for the sum of $2,750, the amount of the sum loaned and one year's interest thereon, due on the 20th day of March, 1881, and bearing 10 per cent. interest from maturity until paid, and executed the third of the six deeds in trust to secure the payment thereof.

Not usury, On the 14th day of September, 1880, James D. Driver held and was the owner of four other notes of Miss McGavock and one of W. H. Grider. These notes were executed to different parties and for different amounts. According to an agreement with appellants, he calculated the interest on these five notes in the same manner he did in taking the first deed of trust, making the amount due thereon, on the 1st day of January, 1882, $2,769.78; and appellants executed their note for this amount, bearing date the 14th day of September, 1880, due on the 1st day of January, 1882, and bearing 10 per cent. interest from maturity until paid, and executed the fourth of the six deeds in trust to secure the payment thereof, and delivered the same to Driver, which he accepted in satisfaction of the five notes then held by him, which he surrendered to appellants.

Appellants contend that the notes secured by the first four deeds in trust, in so far and to the extent appellants,

or either of them, thereby undertake to pay interest on the interest to accrue after the respective dates thereof, are void. They insist that while it is not usurious, according to the more recent decisions, to compound interest, provided the rests are not so frequent as to indicate an intention of evading the usury laws, the compounding must be upon interest already accrued; that the parties cannot stipulate that interest subsequently to accrue shall be compounded; that such stipulation is in the nature of a penalty, and will be deemed void in equity, and that the damages allowed by law for a failure to pay money when due is the lawful interest, and any promise to pay more than that is regarded as an extortion on the part of the creditor, and should be held invalid.

The statutes of this state expressly say: " The parties to. any contract, whether the same be under seal .or not, may agree in writing for the payment of interest not exceeding 10 per centum per annum on money due or to become due." *Mansfield's Digest*, sec. *4733.*

In *Wallis & Bro. v. Lehman, Abraham & Co., 36 Ark., 569,* it was held by this court that a promissory note given for the aggregate amount of an account for advances and 10 per cent. interest thereon to date of the note, and bearing 10 per cent. interest from its date, is not usurious.

In *Turner v. Miller, 6 Ark., 463,* the plaintiff holding several small notes against the defendant, by agreement with him, calculated the interest due on each note, and adding it to the principal, took a new note for the whole sum, bearing 10 per cent. interest, and this court held that the new note was not a usurious contract.

In *Vaughan v. Kennan, 38 Ark., 114,* appellants executed their promissory note for $875, dated the 5th day of February, 1873, payable on the 1st day of September, 1874, and bearing 10 per cent. per annum interest from date, and

stipulated therein that if the interest was not paid annu-
ally, it should become principal and bear the same rate of
interest; and this court held "that the note itself continued
to bear interest at the rate of 10 per cent. after maturity as
before, and that the unpaid interest due at maturity became
interest-bearing at the same rate, together with the suc-
cessive annual installments of interest as the failure to pay
them occurred on each anniversary of the maturity of the
note; not, however, so as to compound the interest on the
amounts in default, which should each bear simple interest
alone at the contracted rate."

In *Portis v. Merrill, 33 Ark., 416*, Portis was sued on a
note executed by him to Merrill for $475.79, dated the 28th
day of June, 1874, due on or before the 28th day of No-
vember, 1874, and bearing 5 per cent. interest per month
from due until paid, and he endeavored to avoid the pay-
ment of the 5 per cent. per month interest by a plea in
equity that it was an agreed penalty intended to stimulate
him to pay the note promptly at its maturity; and this
court held that this interest could not be avoided by any
such plea. Chief Justice English, in delivering the opin-
ion of this court, said: "It was a hard bargain, and the
creditor may have been over-exacting, but appellant must
abide by the face of his written contract, as we held in
*Miller v. Kempner, 32 Ark., 573*. We cannot make new
contracts for parties, or alter their plain meaning by con-
struction.     *     *     *     *     A sane man has no
claim upon a court of law or equity to relieve him from a
hard bargain, when it is voluntarily entered into, and no
fraud is practiced upon him."

It is not proven that there was any fraud practiced upon
appellants, or either of them, in the execution of the first
four deeds of trust, and the notes respectively secured
thereby. In the giving and taking the notes mentioned

interest was not compounded so often as to indicate an intention to evade the usury laws. The maker thereof had a right, under the laws óf this state, to contract to pay any rate of interest not exceeding 10 per centum per annum on moneys due or *to become due.* The interest to accrue on these notes was as much money to become due as the principals. The note sued on in *Vaughan et al. v. Kennan,* *supra,* and the notes secured by the first four deeds in trust in this case, stand upon the same principle. The only difference is in the form of the contract. In one case it is stipulated that the interest when due shall become principal and bear 10 per cent. interest; and in the other case the interest down to the maturity of the notes is made parts of the principals and together with the principals bear 10 per cent. interest from the maturity of the notes. The effect in both cases is the same; and the notes in both cases are valid in law and equity.

On the 19th day of April, 1881, appellants executed to James D. Driver their note for the sum of $1,524, for an indebtedness then contracted by them with him and for corn before that time sold to them, dated the day of its execution, due on the 1st of January, 1882, and bearing 10 per centum per annum interest from date until paid; and Driver agreed to advance to them moneys, goods, wares and merchandise to the amount of seventeen hundred and sixty dollars during the year 1881. To secure this note and advances to be made they executed the fifth of the six deeds of trust.

2. Usury. Selling property on credit. When usurious.

Under his contract with appellants for advances, Driver furnished them with Mississippi county warrants to the amount of $377.31, worth at the time eighty cents on the dollar, and with supplies amounting in the aggregate, including 20 per cent. added to the cost thereof, to the sum of $1,352.27. Driver testified that it was agreed and under-

stood that he should be paid dollar for dollar in currency for the county warrants in consideration of his agreeing to wait until the end of the year for his pay; that he sold the county warrants to appellants at their face value on a credit; and that it was agreed he should be paid the costs and 20 per cent. thereon for the supplies; and that the 20 per cent. was added to pay him for his risk and trouble had and incurred in furnishing them. W. H. Grider testified that the difference between the value of the county warrants and the amount for which the same was issued was allowed as interest.

Appellants insist that the contracts under which these county warrants and supplies were furnished is usurious and void. Are they correct?

In *Ford v. Hancock, 36 Ark., 248,* this court said:

" It is not usury for one who sells a piece of property on credit to contract for a higher price than he would have sold it at for cash. If the intention be, in fact, to sell on credit, he has a right to fix a price greater than the cash price, with legal interest added; but if the sale be really made on a cash estimate, and time be given to pay the same, and an amount is assumed to be paid greater than the cash price, with legal interest, would amount to, this is an agreement for forbearance that is usurious."

Mr. Tyler says:

" The rule is, therefore, well established by the ancient authorities, and the same is recognized at the present day, that where usury is disguised under a sale of merchandise, the property in the goods passes to the vendee, but the excess of price over the just value is considered as a premium for the forbearance of the debt, founded on a presumed loan of so much of the purchase money as is equivalent to the cash value of the commodity sold. It will be observed, however, that the object with which the person

taking the goods entered into the transaction was the immediate means of supplying his wants, and that the sale adopted was only colorable, and not in the common course of trade.

"The same rule applies to a sale or exchange of choses in action, or credit, or where a part only of the consideration is a transfer of chattels, when the real object is a loan of money, although, in fact, no money is received by the borrower. The law, looking at the substance of the transaction, converts the substitute agreed upon by the parties into money according to its cash value. So that, in every instance where the object of the parties is a loan of money, and something else, under the form of an exchange or sale, is substituted for it, the principal of the loan, and consequently of the debt contracted by the nominal vendee, will be the value in money of the substitute received by him; and any consideration paid or reserved to the vendor beyond that will, in general, be considered as interest for its forbearance; and, if exceeding the legal rate, will be regarded as excessive and usurious." *Tyler on Usury, 300.*

Driver was a planter. He kept plantation supplies in his dwelling and smoke-house to sell to his employes. He did not keep them to furnish planters. He, however, sometimes sold to persons other than his employes, but this was not his business. He was not a merchant and did not hold himself out to the world as such. He was a man of considerable property; had money to invest in good notes, and sometimes loaned it. He had loaned appellants various and large sums of money on several occasions. He was to purchase the goods furnished appellants as they needed them. It was not expected that, in furnishing them, he would do more than order and pay for them. He ordered them from parties in Memphis and St. Louis, and they were shipped directly to appellants. The bills were

sent to Driver. The real effect of this transaction was, that appellants borrowed the amount paid for the supplies and agreed to pay him 20 per cent. for the use thereof for a period of time less than one year. The manifest intention of the parties to this merchandise transaction, as shown by the whole evidence and the dealings of Driver and appellants, was to borrow and loan money, under the disguise of a pretended sale of merchandise, at a greater rate of interest than 10 per cent. per annum. The same is true of the county warrant transaction. The preponderance of evidence sustains Grider's statement and understanding as to that.

3. SAME: Relief in equity. But "he who seeks equity must do equity." Upon this principle it is well settled that one who goes into a court of equity for relief against a usurious contract can obtain none, except on the condition he pays the principal and legal interest. *Pickett v. Merchants National Bank of Memphis, 32 Ark., 346; Anthony v. Lawson, 34 Ark., 628.* Appellants in this case will, therefore, be required to pay eighty cents on the dollar for the county warrants and 6 per cent. interest on the value thereof at eighty cents on the dollar from the time the same were furnished, and the amount paid for the goods and 6 per cent. interest from the time when Driver paid for them.

Shoemaker, Joplin & Co. were commission merchants, having an office and doing business in the city of Memphis, in the state of Tennessee. Miss McGavock was the owner of a large plantation and following the occupation of a planter in the county of Mississippi, in this state. During the year 1878 Shoemaker, Joplin & Co. furnished her with plantation supplies and advanced her moneys. She shipped to them a portion, if not all, of her cotton crop of that year. On the 19th day of April, 1879, in the city of Memphis, they had a settlement of accounts, and for the balance

due Shoemaker, Joplin & Co. she then and there executed a note to them, giving the same for the sum of $2,375.89, due on the 1st day of January, 1880, and payable at Osceola, Arkansas, and Shoemaker, Joplin & Co. agreed to furnish and advance to her, during the year 1879, moneys and plantation supplies to any amount she might desire not exceeding one thousand dollars, and she agreed to ship to them her cotton crop of 1879; and to secure this note and future advances she executed the sixth deed in trust. They continued to advance moneys and supplies to her, during the year 1879, and she shipped to them a portion of her cotton crop of 1879. On the 11th day of September, 1880, they had a settlement, and it was ascertained that she was indebted to Shoemaker, Joplin & Co. on account, in addition to the note for $2,375.89, in the sum of $110.54, for which appellant W. H. Grider executed his note, due the 15th day of December, 1880, and bearing 6 per cent. interest from date. James D. Driver purchased both the notes executed to Shoemaker, Joplin & Co. after the maturity of the larger and before the maturity of the smaller. The smaller note was incorporated in the note secured by the fourth deed in trust.

Appellants insist that the accounts of Shoemaker, Joplin & Co., settled by the notes executed to them, were usurious on account of illegal commissions and interest charged therein; that the proceeds of the sale of the cotton of 1879, shipped to Shoemaker, Joplin & Co., should have been appropriated to the payment of the note for $2,375.89 and the earliest items of the account of Miss McGavock with them, instead of appropriating them entirely to the payment of the account, so far as they would extend, as was done; and that the appropriation made, as it should have been, would have satisfied the sixth deed of trust, the pro-

ceeds being large enough to pay the indebtedness secured thereby.

4. Laws of other states. Presumption as to. The accounts of Miss McGavock with Shoemaker, Joplin & Co. were made and contracted in Memphis, in the state of Tennessee, and their validity and the amounts due thereon depend upon and are determined by the laws of Tennessee. *State v. Carl & Tobey, 43 Ark., 353; Parsons Oil Co. v. Boyett, 44 Ark., 230; and Jones v. McLean, 18 Ark., 456.* There was no evidence introduced to prove what the laws of Tennessee are or were. In many cases it will be presumed that the laws of a foreign state, nothing being shown to the contrary, correspond with our own; but this presumption should not be indulged in when our laws impose a penalty or work a forfeiture, as in the case of usury. Our statute of usury is highly penal. It forfeits the entire debt, and did when these accounts were made. We are not, therefore, to assume that the laws of Tennessee correspond with our own, and visit the transaction with the same penal consequences. On the contrary, if the appellants intended to avail themselves of the benefit of the Tennessee statute of usury, they should have alleged in their complaint that the accounts were usurious by the laws of Tennessee, and should have sustained this averment by proof at the hearing. As the case now stands, we must assume that the accounts were not usurious. *Hull v. Augustine, 23 Wis., 383; Cutler v. Wright, 22 N. Y., 472; Greenwade v. Greenwade, 3 Dana, 497; and Forsyth v. Baxter, 3 Ill., 9.*

Appellants lost the right to have the proceeds of the sale of the cotton of 1879 appropriated in any particular manner, by the settlement made with Shoemaker, Joplin & Co., by the execution of the note for the balance of $110.54 found due on said settlement, and incorporating that note into another and securing the same by a deed in trust.

The decree of the court below is reversed, and this cause is remanded, with instructions to the Mississippi circuit court to enter a decree herein dissolving the injunction granted in this suit, except in so far and to the extent it inhibits and restrains the sale of lands under the fifth deed of trust to pay any amount for county warrants and goods, wares and merchandise in excess of eighty cents on the dollar on amount of county warrants furnished appellants and 6 per cent. interest on the value thereof, estimating it at eighty cents on the dollar, from the time Driver furnished it to appellants, and in excess of the amount paid by Driver for the goods which he furnished to appellants and 6 per cent. interest thereon from the date of the payment thereof, and making the injunction perpetual as to such excess and forever restraining the collection thereof; and to render judgment against James D. Driver, one of the appellees herein, for one-sixth of the costs of the court below and against appellants for the remainder thereof. Judgment will be rendered here against James D. Driver for the costs of appeal.