### DEITCH et al. v. STAUB.

(Circuit Court of Appeals, Sixth Circuit. April 8, 1902.)

#### No. 963.

1. BUILDING AND LOAN ASSOCIATIONS—LEGALITY AND POWERS—TENNESSEE STATUTES.

A building and loan association chartered by a chancery court of Tennessee, purporting to act under Acts Tenn. Jan. 30, 1871, authorizing the organization of corporations by such courts, although its charter was invalid for lack of power in the court to create a corporation for such purpose and with such powers, was authorized to become a valid corporation, with all the powers prescribed for such associations, by Acts 1875, c. 142, by virtue of Act March 23, 1883, which provided "that any persons organized as a corporation under a charter granted by a chancery court" might obtain any power granted by the act of 1875, by making an application for amendment of its charter in accordance with its provisions, "provided however that this act shall in no way apply or affect corporations where suits have already been brought to declare their charter void"; and the fact that such association, in its application

made under the latter act, designated some of the powers it desired to obtain by a general reference to the section of the act of 1875 relating to building associations, which it described sufficiently to identify the same, instead of enumerating such powers, was a mere irregularity, not affecting the validity of the amendments to its charter thus obtained by reference.

**2. STATUTORY CONSTRUCTION—PROVISO—OFFICE OF.**

The primary and usual office of a proviso is to except something out of a statute which would otherwise be within it.

**8. BUILDING AND LOAN ASSOCIATIONS—BORROWING MEMBERS—ESTOPPEL TO DENY LEGAL ORGANIZATION.**

A member of a building and loan association who obtains a loan from it, and executes his note and mortgage therefor, waives the right to deny the power of the association to make such loan or to carry on the business of such an association, and is estopped to set up an irregularity in its organization in defense to an action to enforce the contract.[1]

**4. CURATIVE STATUTE.**

Whether a corporate organization be invalid, because of failure to comply with the terms of a valid law, or because the organization was under an invalid law, there is no impairment of the obligation of any contract by subsequent legislation permitting such corporation to become a corporation de jure.

**5. BUILDING AND LOAN ASSOCIATIONS—SUIT TO FORECLOSE MORTGAGE—DEFENSE OF USURY.**

Under the statute of Tennessee which permits building and loan associations to charge and collect a premium on loans, in addition to legal interest, where the same is bid in open competition, but not otherwise, an averment in a bill to foreclose a mortgage securing such a loan to a shareholder that the premium contracted for was so bid is supported by the presumption that the law was complied with; and the burden rests upon the defendant to disprove such allegation, and to establish his defense of usury.

**6. SAME—PROCEDURE FOR MODIFICATION OF INTERLOCUTORY DECREE.**

Where the defense of usury pleaded by a defendant in a suit to foreclose a mortgage was adjudged against him by an interlocutory decree, and no application was made to reopen the case to admit newly discovered evidence on the issue, in accordance with the recognized practice in equity, a master to whom the cause was referred to state the account was justified in ignoring testimony introduced before him tending to support the claim of usury, and it was not error for the court to overrule exceptions to his report based on that ground.

**7. SAME—RIGHTS OF PURCHASER ASSUMING MORTGAGE—USURY.**

A purchaser of property upon which there was a mortgage to secure a loan from a building and loan association, upon which the contract required monthly payments of interest and premiums, and the payment of the principal at a fixed time, who assumed payment of the same as a part of the purchase price, and who has had the benefit of the loan until its maturity by its terms, paying the interest and premiums thereon in accordance with the contract, cannot set up the defense of usury to an action to recover the principal on account of the premiums so paid; nor is he entitled to have the premiums paid credited as payments on the principal because the association has become insolvent.

Appeal from the Circuit Court of the United States for the Eastern District of Tennessee.

Creditors of the Knoxville Building & Loan Association filed a bill in the court below for the purpose of winding the association up as an insolvent

---

[1] See Building and Loan Associations, vol. 8, Cent. Dig. § 76 [b, h, p]; Corporations, vol. 12, Cent. Dig. §§ 84, 85.

corporation. Under that bill the appellee, Peter Staub, was appointed receiver, and directed to collect in all of its assets of every kind. By virtue of this authority the receiver filed this bill against the appellants for the purpose of foreclosing two mortgages made to the association to secure money advanced to members of the association. One of the mortgages was made by Bloom and Goodfriend to secure a note for $2,000, of December 20, 1889. The mortgaged property was subsequently conveyed to the appellant Morris Deitch; he assuming to pay off the note and debt of Bloom and Goodfriend, and taking an assignment of the shares of stock in the association held by them, which had been also pledged to secure said loan. The other mortgage was made in 1896 by Deitch and wife, and was to secure a loan to Deitch of $4,400, evidenced by a note. Deitch also pledged 22 shares of the stock of said association as collateral security for same loan. There was a decree for the complainant, from which the defendants appealed.

H. M. Ingersoll, for appellants.

Leon Jourolmon, for appellee.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

LURTON, Circuit Judge, after making the foregoing statement of the case, delivered the opinion of the court.

The enforcement of the mortgages made to secure loans by the association to its stockholders and members is resisted by the appellants upon the grounds: First. That the association was not, when the mortgages were made, a building and loan corporation, either de jure or de facto, and was therefore unable to exercise the powers granted by law to such corporations only,—of making premium loans to their members; that, not being a lawful building and loan corporation, the loans secured by mortgage, and herein sought to be enforced, were usurious, as both were upon contracts requiring the borrower to pay both legal interest and a monthly sum in addition, called a "premium." Second. That if the said association is held to be a building and loan corporation, de jure or de facto, the loans here involved were made upon and for a level premium fixed by the association, and not as a result of competitive biddings, as required by the Tennessee law regulating the loans of Tennessee building and loan corporations.

1. The Knoxville Building & Loan Association was organized under a decree of the chancery court of Knox county, Tenn., pronounced February 24, 1872. In addition to the ordinary powers incident to every corporation, it was given power to "purchase, hold and convey real estate," and to lend money "thereon for building and other purposes." None of the usual powers of a building and loan association, such as the advancing of money to shareholders upon competitive premium biddings, are undertaken to be conferred by this court charter. This organization purported to be under and in pursuance of the Tennessee act of January 30, 1871; being an act authorizing the organization of corporations by the chancery courts of the state. So far as that act specifically provided what kind of corporations might be organized by the chancery court, and defined what their powers should be, the act has been held valid. But so far as it undertook to authorize the creation of corporations with powers subject to the discretion of the court, it has been held void. Ex parte Chad-

well, 3 Baxt. 98; Railroad Co. v. Johnson, 8 Baxt. 332; Heck v. McEwen, 12 Lea, 97. The act of 1871 does not mention building and loan corporations, nor corporations for buying and selling land or lending money upon lands, nor define the powers of any such corporations. It is probable that the court acted under the tenth section of the act, which provides for the incorporation of corporations to carry on any "local business." Neither that section, nor any other of the act, defines what shall be the powers of such corporations. Under the Tennessee decisions cited above, this section of the act is plainly unconstitutional, and no valid corporation could be organized under any decree depending upon that section for its authority. By chapter 142, Acts Tenn. 1875, a very elaborate and complete law was provided for the organization of many kinds and classes of private corporations, which repealed the act of 1871 and all prior laws upon the subject. This act has been in force ever since its passage, and is the law under which all organizations have since been made. That act, among other things, provided for the organization of building associations, and defined their powers. Among other things, it empowered such companies to lend their funds to their shareholders,— to such one of them as at a stated meeting, and upon a competitive bidding, should agree to pay for the preference in obtaining a loan the highest premium in addition to legal interest. By the nineteenth section of the act of 1875 it was provided as follows:

"That any corporation heretofore chartered by an act of the general assembly, which may desire to change its name, increase its capital stock, or obtain any powers granted by this act, shall have the right to do so, by the board of directors of said corporation copying said amendment, and making an application in these words: 'We, the undersigned, comprising the board of directors of (here insert the name of the corporation), apply to the state of Tennessee, by virtue of the general laws of the land, for an amendment to said charter of incorporation, for the purpose of investing said corporation with the power (here state the clause in the general law aforesaid, which is desired as an amendment, or if it be simply to change the name, so state the fact). Witness our hands the ―――― day of ――――.' The same to be probated or acknowledged as provided by section 15 of this act, and the certificate of registration given by the secretary of state, under the great seal of the state, shall complete the amendment to said act of incorporation, and the validity thereof shall not, in any legal proceeding, be collaterally questioned, as in cases of application for original charter."

This section, it will be noticed, did not extend to corporations organized under orders of the chancery courts the privileges of amendment extended to those "chartered by an act of the general assembly." This was remedied by Act March 23, 1883, which is in these words:

"Section 1. That any persons organized as a corporation under a charter granted by a chancery court of this state, or under the Acts of 1875, who may desire to change the name of such corporation, increase its capital stock, or obtain any power granted by the act entitled An act to provide for the organization of corporations, approved March 23, 1875, shall have the right to do so under and in the manner provided by section 19 of said act, which provides for the amendment of charters granted by the legislature, and with the like effect as therein provided: provided, that this act shall in no way apply to or affect corporations where suits have already been brought to declare their charters void, and shall have no effect on any kind of litigation or suits now pending against such corporation, for any purpose.

"Sec. 2. Be it further enacted, that this act take effect from and after its passage, the public welfare requiring it." Laws 1883, c. 163.

Long prior to the transactions involved, the Knoxville Building & Loan Association attempted to acquire the powers conferred by this act of 1875 upon building associations by amending the court charter, under which it had been operating, by an "application" for an amendment as provided by the nineteenth section of that act. That application was in these words:

"We, the undersigned, comprising the board of directors of the Knoxville Building & Loan Association, a corporation chartered under the laws of Tennessee, and organized under a decree of the chancery court of Knox county, Tennessee, pronounced on February 24, 1872, in the matter of R. R. Bearden et al., ex parte, for the purpose of carrying on the business of a building and loan association in said Knox county, Tennessee, apply to the state of Tennessee, by virtue of the general laws of the land, for an amendment to said charter (which is spread of record in Record Book A of said court, pp. 345 to 347), for the purpose of investing said corporation with all the powers and privileges provided for building associations by the Acts of the general assembly of the state of Tennessee (chapter 142, section 14),. especially the following powers and privileges provided by said act, viz.: The members of said corporation shall have the power to adopt a constitution, and the constitution adopted, the by-laws and regulations, shall have the force and effect of a legal enactment on the members of said corporation: provided, the same are not in conflict with the general laws of the land. The corporation shall have the power to take and hold all such real estate as may be mortgaged to it, or conveyed in trust, to secure any debt of the corporation for loan of its funds; and the said corporation shall have power to purchase any such real estate at any sale thereof, and the same to. hold, sell, or otherwise dispose of as the said corporation may deem expedient. Said corporation may purchase at judicial or execution or trustee's sale any real estate mortgaged or conveyed to it to secure a debt, and said real estate, or any other real estate the corporation may be entitled to hold, the said corporation shall have the power to sell, convey, lease, or mortgage at pleasure. Married women may hold stock in such corporation, free from the claims or debts of their husbands. The corporation may, by by-laws, make regulations concerning the subscription for, or transfer of stock, fix upon the amount of capital to be invested in the enterprise, the division of the same into shares, the time required for payment thereof by the subscribers for stock, and the amount to be called for at one time. Witness our hands," etc.

This was duly acknowledged, registered in Knox county, and filed with the secretary of state, who affixed thereto the great seal of state, and recorded it in his office as required by law.

The objections which have been made to this amendment of the powers of the association are: First, that the charter was invalid, and, as such, nonamendable, and that the act of 1883 does not purport to apply to an invalid corporation; second, that the amendment did not purport to confer power to make premium loans.

The act, in terms, applies to "all persons organized as a corporation under a charter granted by a chancery court of this state," etc. This describes the precise status of this association. The organization was invalid. This must be conceded. Whether, being a good-faith organization under a law purporting to give authority to the chancery courts to organize corporations to conduct any lawful business with such powers as the court should deem needful and not hurt-

ful, it was a corporation de facto as to those who dealt with it as such, we need not decide. But the act is not, in terms, confined to valid organizations, and contains no word or phrase indicating an intent that it should apply only to "persons" validly "organized as a corporation," etc. That invalid organizations were included is made evident from the proviso, which provides that the act shall not "apply to or affect corporations where suits have been already brought to declare their charters void," etc. The proviso thereby excepts out of the act the case of corporations organized by the chancery courts, against whom suits were pending to declare their charters void, and also declares that the act shall have no effect upon any suit pending against such corporations. Why except out of the benefits of the act corporations against whom suits were pending, involving the validity of their charters, if invalid corporations were not within the terms of the act? The primary and usual office of a proviso is to except something out of a statute which would otherwise be within it. Its use is to take special instances out of a general class. Suth. St. Const. §§ 222, 223; Gibbons v. Ogden, 9 Wheat. 191, 6 L. Ed. 23. The power of the state to permit an invalid corporate organization to become valid by compliance with the terms of a curative statute cannot be denied. Shields v. Land Co., 94 Tenn. 146, 153, 28 S. W. 668, 26 L. R. A. 509, 45 Am. St. Rep. 700. Whether the organization was invalid because of failure to comply with the terms of a valid law, or because the organization was under an invalid law purporting to authorize such a corporation, there is no impairment of the obligation of any contract by subsequent legislation permitting the irregular or invalid corporation to become a corporation de jure.

It is next urged very earnestly that the only powers added by this amendment are those copied into the amendment, and that the application for "all the powers and privileges provided for building associations by the act of the general assembly of the state of Tennessee (chapter 142, section 14), especially the following powers and privileges provided by said act," etc., does not sufficiently identify the act referred to, or the powers and privileges applied for, because it omits the date of the act; and, secondly, that, if this objection is without merit, the failure to copy into the amendment all of the powers desired is fatal to the acquisition of any powers except those set out in full. The objection that the date of the act is not set out, and therefore not identified, is without merit. The maxim, "Certum est quod reddi potest," has application. There was no other law defining the powers of a building association, except chapter 142, § 14, Acts 1875. From the character of the powers applied for, the reference to a Tennessee act as chapter 142, § 14, makes it absolutely certain that the application was for the powers and privileges provided for building associations by the act of 1875. The objection that all of the powers desired should have been copied into the application in hæc verba, and not brought in by reference, has more substance. The purpose to obtain all of the powers and privileges conferred by the act upon building associations, in addition to those "especially" asked for and copied, is clear beyond dispute. It was not an application for certain

of those powers only, but for all. This being the case, the mere failure to copy all of the powers desired in full into the application, instead of applying for a part by reference to the act and a part by specific application, should be regarded as a mere irregularity, not affecting the validity of the amendments thus obtained by reference to the act, and general characterization of the powers desired. Aside from general principles of law which would reach the same result, the act of 1875 itself provides in respect to all such amendments that "the validity thereof shall not, in any legal proceeding, be collaterally questioned." When the directors of the Knoxville Building & Loan Association applied for an amendment to the chancery court charter under which they had been acting as a building and loan incorporation, there was a valid law under which a valid building and loan incorporation might have been organized, and a law under which any building corporation organized theretofore under either a general or special law of the legislature, or under a chancery court decree, might obtain the powers conferred upon building incorporations by the act of 1875. This condition brings the case within even those definitions of a "de facto corporation" which seem to hold that there can be no de facto corporation unless there was a valid law under which a de jure corporation might have been organized. The irregularity of applying for all the powers conferred upon building associations by reference to the section and chapter of the act specifying them ought not to avail the appellant to enable him to escape his obligations as a borrowing member, whereby he very solemnly recognized the association as a valid building incorporation under the law of Tennessee. He waived the right to make any such objection by the execution of his note and mortgage, and by the assumption of the note and mortgage of Bloom and Goodfriend. Whatever might be the result of a proceeding by the state to prevent the association from assuming to be a corporation at all, or a corporation having the powers of a building incorporation under the act of 1875, it is not competent for the appellant to raise any such objections in a proceeding to enforce mortgages recognizing the corporate character of the association. Toledo, St. L. & K. C. R. Co. v. Continental Trust Co., 36 C. C. A. 155, 165, 95 Fed. 497; Merriman v. Magiveny, 12 Heisk. 494; Railroad Co. v. Johnson, 8 Baxt. 332; Anderson v. Railroad Co., 91 Tenn. 44, 17 S. W. 803; Ashley v. Board, 8 C. C. A. 455, 60 Fed. 55; Wallace v. Loomis, 97 U. S. 146, 24 L. Ed. 895; Douglas Co. v. Bolles, 94 U. S. 104, 24 L. Ed. 46; Association v. Chamberlain, 4 S. D. 271, 278, 56 N. W. 897; Freeland v. Insurance Co., 94 Pa. 504; Mor. Corp. §§ 750, 759; Smith v. Sheely, 12 Wall. 358, 20 L. Ed. 430; McTighe v. Construction Co., 94 Ga. 306, 21 S. E. 701, 32 L. R. A. 208, 47 Am. St. Rep. 153; Cowell v. Springs Co., 100 U. S. 55, 61, 25 L. Ed. 547.

The loans involved purport to be loans made for a premium in addition to lawful interest. This is authorized by the law under which such building associations do business in Tennessee, and such loans are not illegal or usurious. Patterson v. Association, 14 Lea, 689. But the law authorizing the selling of loans for a premium pro-

vides that such premium shall be paid, "not as a part of the loan, not as interest, but as a means of determining which one of the shareholders shall receive the loan, whenever there are a number of shareholders who may simultaneously desire to effect a loan." To effectuate this the law requires that the funds of such associations "shall be offered for loan in open meeting, at a rate not in conflict with the law of the state, and the stockholder who shall bid the highest premium for the preference or priority, shall be entitled to receive a loan of $200.00 for each share of stock held by such stockholders." Where the loans were made not at open meeting upon competitive biddings, but for an arbitrary premium fixed by a by-law or otherwise, the Tennessee courts have uniformly held the loan usurious to the extent of the premium so exacted. Post v. Association, 97 Tenn. 408, 37 S. W. 216, 34 L. R. A. 201; Douglass v. Kavanaugh, 33 C. C. A. 107, 90 Fed. 373.

This cause came on to be heard upon all the evidence in the case, and on November 22, 1899, the trial judge filed an opinion, in which, among other things, he said:

"Although not without some difficulty, I reach the conclusion that the defendant has failed to show (the burden being on him) that the loan was upon a level premium, without bidding. C. Aebli does not sustain the defendant in this contention, and defendant's own testimony is purely negative and hearsay."

2. The second defense made in the answer was that:

"Neither of said loans was the result of competitive biddings among the members as a means of determining which one should receive the loan of money then in the treasury, but the substance of the transaction was a mere loan of money for a bonus, to wit, a premium charged and paid as heretofore shown, which was fixed by agreement of parties to the loan, whereby said association was to receive more than six per cent. per annum as compensation for the use of said money," etc.

There was evidence tending to both support and contradict this defense of usury. A petition to rehear the case upon this and other points was denied. But no application was made to reopen the case for new or additional evidence. Thereupon a decree was entered which adjudged the defense of usury against the defendant. The cause was then referred to a special master to ascertain and report what amount was due upon each of the loans, and to ascertain the present cash value of the shares upon which the loans had been made, and fixing the basis upon which this accounting should be had. Upon the hearing before the master under this decree the deposition of C. Aebli was again taken, and additional evidence tending to show that the loans were not made upon open competitive biddings was elicited. This evidence was objected to as irrelevant to any issue before the master, who, while making no express ruling, yet ignored it altogether, and confined his report to the matters referred to him. The defendant excepted to the report because he did not report that the loans were usurious, as not being made upon competitive biddings. The master overruled the exception, and the court did likewise. It is now insisted that we must consider this new evidence thus introduced. The decree adjudging that the loans were not usurious was

not final, in the sense that an appeal would lie therefrom. It was undoubtedly interlocutory, and not appealable, and, being interlocutory, was subject to change by the court before final decree or upon the final hearing. Fourinquet v. Perkins, 16 How. 82, 84, 14 L. Ed. 854; Latta v. Kilbourn, 150 U. S. 524, 529, 14 Sup. Ct. 201, 37 L. Ed. 1169; Bates, Fed. Eq. Proc. § 781. Though interlocutory, it was a decree upon the merits deciding upon the facts and law one of the material issues in the case, and, as such, was a proper subject of a rehearing, according to the settled principles of practice when a rehearing is desired upon the ground of newly discovered evidence. Such an interlocutory decree cannot be reopened to let in new evidence, except upon the same terms and conditions upon which new evidence may be heard in the case of a final decree. Bates, Fed. Eq. Proc. § 684; Gillette v. Refrigerating Co. (C. C.) 12 Fed. 108. In Baker v. Whiting, 1 Story, 228, Fed. Cas. No. 786, and Jenkins v. Eldredge, 3 Story, 299, Fed. Cas. No. 7,267, the whole subject of the practice in such cases is examined with the care characteristic of Justice Story. The proposal of the defendants to inject into the record additional evidence, without laying any ground or obtaining any order of the court upon a matter which had been adjudged against him by the interlocutory decree, was without any precedent whatever, and would tend to break down every principle affecting the finality of an adjudication upon facts until reopened according to the settled principles of equity practice. The new evidence was properly disregarded by the master, and there was no error in overruling the appellants' exception to the master's report. The law authorized building associations to lend money upon a premium in addition to legal interest. The loans were presumptively made according to law, and not in violation of law; the transaction being one between a building association and a shareholder. The fact that the bill averred that the lending was upon competition was a fact made out in the absence of proof by the presumption of legality. The case of the defendant was not made out by the evidence upon which he went to trial, and he could only introduce new evidence by showing that it was new, and not cumulative; that he had no knowledge of it until after the decree, and had been guilty of no negligence in not sooner producing it.

3. The court below directed that Deitch should be credited, upon the principle of partial payments, with all of the premiums and interest paid by him upon the loan made to him personally. This crediting of the principal with sums paid under a valid contract as premiums seems to have been put upon the ground that the insolvency of the association had and would prevent the payment of the loan by the payment of the shares according to the scheme of the business of such associations, and the terms of the loan to Deitch, and to therefore relieve him of all obligation, except to return the money actually received, with interest from date of loan. The association has not appealed, or complained of this decree. But in respect to the loan to Bloom and Goodfriend, which Deitch assumed to pay as the price for Bloom and Goodfriend's equity of redemption in the land mortgaged to secure the loan to them, the court held that Deitch must settle according to the contract, and was not entitled to have pay-

ments of premiums credited as payments upon the principal of the debt. The contracts in the two cases were not alike. Bloom and Goodfriend borrowed $2,000, for which they gave a straight note, payable in 10 years. The agreement, as evidenced by the bidding and mortgage, was that for this loan they should pay interest at the lawful rate monthly, and a premium of $7.59 monthly, and pay the note at maturity, and that failure to pay either interest or premium should precipitate the maturity of the principal. The full term of 10 years had expired when the decree below was made, and the borrowers had had the loan for the full term of the agreement, and were bound to pay the principal according to the agreement. Deitch made all the terms of this agreement his own by his assumption of the contract as the price he was to pay for the mortgaged property. After paying both interest and premium for years, according to the contract, he notified the association, before it had passed into the hands of a receiver, that he should pay nothing more. By a multitude of cases, Deitch was in no situation to strip the loan to Bloom and Goodfriend of usury, even if such a defense had been open to the borrower. The defense was personal so far as that no one assuming the debt could rely upon it. As the purchaser of the mortgaged property, he got the full benefit of the incumbrance, in the reduced price paid. Nance v. Gregory, 6 Lea, 343, 40 Am. Rep. 41; Parker v. Hotel Co., 96 Tenn. 289, 34 S. W. 209, 31 L. R. A. 706; Lloyd v. Scott, 4 Pet. 205, 7 L. Ed. 833. Having had the full benefit of the loan for the full term of the contract, it was not inequitable to require Deitch to comply with the terms upon which the loan was made. He has been paid to do this, and is in no situation to complain, for the agreement has not been broken by the association in any particular.

The decree must be accordingly affirmed.