BAILEY *v.* COMMERCE UNION BANK.

5-408                                    269 S. W. 2d 314

Opinion delivered May 17, 1954.

[Opinion on rehearing delivered June 28, 1954.]

*Talley & Owen* and *Dale Price,* for appellant.

*Owens, Ehrman & McHaney* and *James M. McHaney,* for appellee.

GEORGE ROSE SMITH, J.   This is an action in replevin brought by the appellee to recover possession of a house trailer.   The trailer was originally sold by the Wiley Trailer Market to Paul C. Thompson, the seller retaining title to the vehicle.   By subsequent assignments the seller's contract has passed to the appellee and the purchaser's interest has passed to the appellant.   The complaint alleges that the unpaid balance of the purchase price amounts to $4,736.06.

The defendant first filed a motion to transfer the cause to equity, upon the ground that usury would be pleaded as a defense. Before the court acted upon that motion the defendant filed an answer which asserts that the contract is usurious and void upon its face. The plaintiff then moved that this defense be stricken, for the reason that the defendant was not a party to the original contract and therefore cannot plead usury. Upon these pleadings, without hearing any testimony, the court denied the motion to transfer and sustained the motion to strike the plea of usury. The case then proceeded to a final judgment for the plaintiff. Upon this appeal the appellant attacks the court's rulings on the two motions.

The court was right in denying the request for a transfer to chancery. A plea of usury raises no issue that cannot be effectively determined by a court of law. The debtor, it is true, by acting promptly may bring suit in equity to obtain cancellation of the contract. But this appellant failed to take that step, and instead it was the creditor who first put the debt in issue by seeking to replevy the property. The plea of usury thus became a defense available to the debtor. This defense is no more complicated than, for example, a plea of payment, and in no way does it require the exercise of powers peculiar to a court of equity. Under the doctrine of *res judicata* a judgment for the defendant in a court of law would settle the controversy with the same finality that would attend an equitable decree of cancellation. There was no occasion for the circuit court to surrender control of the case.

The serious question is presented by the plaintiff's motion to strike the defense of usury: May one who purchases property already subject to a title retaining contract attack that contract as usurious?

At common law the plea was not allowed. The courts reasoned that the purchaser had presumably received credit on the purchase price for the amount of the encumbrance and would be unjustly enriched if the

debt were cancelled. (It could of course be argued with equal force that, if the contract was void from the beginning, it is the creditor who is unjustly enriched by denying to the purchaser a valid defense. There is simply a choice of who shall bear the loss.) In 1877 we adopted the common law rule by declaring that a plea of usury is personal to the borrower. *Pickett* v. *Merchants' Nat. Bank,* 32 Ark. 346. We later held, in 1885 and again in 1886, that one who challenges a usurious contract must tender the debt plus lawful interest. *Grider* v. *Driver,* 46 Ark. 50; *Tillar* v. *Cleveland,* 47 Ark. 287, 1 S. W. 516.

These two rules—that the plea is personal to the borrower and that even the borrower must tender the debt with legal interest—are mere common law pronouncements which the Legislature is free to abrogate if it likes. The General Assembly, at its next session after the decision in the *Tillar* case, undertook to abolish both rules, by the enactment of Act 39 of 1887. Ark. Stats. 1947, §§ 68-609—68-611. Sections 1 and 3 of the Act are pertinent to the present case:

"Section 1. Every lien created or arising by mortgage, deed of trust or otherwise, on real or personal property, to secure the payment of a contract for a greater rate of interest than ten percentum per annum, either directly or indirectly, and every conveyance made in furtherance of any such lien is void; and every such lien or conveyance may be cancelled and annulled at the suit of the maker of such usurious contract, or his vendees, assigns or creditors. The maker of a usurious contract may by suit in equity against all parties asserting rights under the same, have such contract and any mortgage, pledge or other lien, or conveyance executed to secure the performance of the same, annulled and cancelled, and any property, real or personal, embraced within the terms of said lien or conveyance, delivered up if in possession of any of the defendants in the action, and if the same be in the possession of the plaintiff, provision shall be made in the decree in the case removing the cloud of such usurious lien, and conveyances made in furtherance thereof, from the title to such prop-

erty. And any person who may have acquired the title to, or an interest in, or lien upon such property by purchase from the makers of such usurious contract, or by assignment or by sale under judicial process, mortgage or otherwise, either before or after the making of the usurious contract, may bring his suit in equity against the parties to such usurious contract, and anyone claiming title to such property by virtue of such usurious contract, or may intervene in any suit brought to enforce such lien, or to obtain possession of such property under any title growing out of such usurious contract, and shall by proper decree have such mortgage, pledge or other lien, or conveyance made in furtherance thereof, cancelled and annulled in so far as the same is in conflict with the rights of the plaintiff in the action.''

''Section 3. Neither the maker of a usurious contract nor his vendees, assigns or creditors, or any other person who may have or claim an interest in any property embraced within the terms of said usurious contract, shall be required to tender or pay any part of the usurious debt or interest as a condition of having such contract, and any conveyance, mortgage, pledge or other lien given to secure its payment or executed in furtherance thereof, enjoined, cancelled and annulled, and any rule of law, equity or practice to the contrary is hereby abrogated.''

It is difficult to see how the Legislature could have expressed itself more clearly. In 1875 the General Assembly, pursuant to the mandate contained in the Constitution of 1874, Art. 19, § 13, had declared all usurious contracts whatever to be void. Ark. Stats., § 68-608. During the next eleven years this court laid down the two rules that we have mentioned. By § 1 of Act 39 of 1887, quoted above, it is declared that ''The maker of a usurious contract may by suit in equity against all parties asserting rights under the same, have such contract . . . annulled and cancelled.'' The same right is then extended to ''any person who may have acquired the title to, or an interest in, or lien upon such property by purchase from the makers of such usurious contract.'' By

§ 3 it is declared that neither the maker nor his vendees, assigns or creditors shall be required to tender or pay any part of the usurious debt or interest as a condition to cancellation of the contract. In an abundance of caution the Legislature pointedly added that "any rule of law, equity or practice to the contrary is hereby abrogated."

This statute, with reference to the particular point now under discussion, has been considered in only one case, *Hiner* v. *Whitlow*, 66 Ark. 121, 49 S. W. 353, 74 Am. St. Rep. 74. There Hiner had bought mortgaged property and caused it to be conveyed to his wife. It is not clear whether she assumed the debt or took subject to it, as the court regarded that question as immaterial. In a suit brought by Whitlow to foreclose the mortgage Mrs. Hiner attempted to rely upon usury as a defense. We first referred to the common law rule which precludes one not a party to the original contract from pleading usury "unless allowed to do so by a statute." We then examined §§ 1 and 2 of Act 39 and concluded that the common law rule had not been changed thereby. The opinion stresses the concluding clause of § 1, to the effect that the plaintiff may have the usurious contract cancelled "in so far as the same is in conflict" with his rights. The court's reasoning was that since the purchaser of mortgaged property acquires not the property itself but only the equity of redemption—"that part of the estate or interest in the property not covered by the mortgage"—there is no conflict between the purchaser's rights and the usurious lien.

We have studied the statute and the *Hiner* opinion long and carefully, and we are wholly unable to reconcile the two. The final clause in § 1 of the statute, which was emphasized in the *Hiner* opinion, can easily be harmonized with the rest of the Act. If, for instance, a usurious mortgage embraces three tracts of land and the plaintiff has purchased only one tract, this clause limits his right of cancellation to the extent that the mortgage conflicts with his interest.

If, however, this one clause is to be given the force attributed to it by the *Hiner* case, then it completely nullifies the rest of § 1 and all of § 3, as far as an assignee of the contract is concerned. This is so for the reason that in every situation, without exception, it could be said that the purchaser of encumbered property acquires only the equity over and above the encumbrance. The result is not only to deny to the purchaser of "an interest" in the property the right of cancellation, a right plainly given by § 1, but also to require the purchaser to pay the entire debt and usurious interest thereon, in the teeth of § 3.

The *Hiner* case has not been followed, nor even cited, in the fifty-five years since it was decided. It did not establish a rule of property in the sense that anyone has patterned his conduct in reliance upon the case. That is, it is pretty certain that no creditor, owning a usurious contract, has persuaded his debtor to transfer the property to a third person for the sole purpose of immunizing the contract from attack. Yet, if the decision is allowed to stand, it could readily be utilized by an unscrupulous lender as a means of protecting usurious contracts; for the loan could ostensibly be made to a straw man, and the real borrower could then be required to assume the obligation. The *Hiner* case, to the extent that it construed Act 39 of 1887, is overruled.

We do not intimate that this appellee's conditional sales contract is in fact void for usury. That issue has not been investigated, since the defense of usury was stricken from the defendant's answer and was therefore not explored at the trial. The statute, however, expressly gives the borrower the right to litigate the matter in a court of equity, and, as we have seen, this is a substantive right that can equally well be asserted in a court of law.

Reversed and remanded for a new trial.

McFADDIN and WARD, JJ., dissent.

GRIFFIN SMITH, Chief Justice, dissenting. My objection goes to the majority's action in overruling the

*Hiner* case. A decision that has landmarked a particular statute for more than half a century should not be cast aside with conclusions that in the composite amount to a declaration that "We don't like it!" We have frequently said that judicial construction of a statute will be presumed to have come to the attention of the general assembly, and acquiescence by that body for a long period of time where the subject-matter was of legislative address carries with it the implication of assent.

## ON REHEARING

GEORGE ROSE SMITH, J., on rehearing. In its brief on rehearing the appellee does not question the correctness of our interpretation of Act 39 of 1887. Instead, it is now contended that the appellant's right to plead usury should be determined by the law of Tennessee, where the original contract of sale was made, and that by Tennessee law the plea is not available to an assignee of encumbered property.

This conflict of laws question was not seriously argued in the original briefs. There the appellant somewhat indirectly suggested that the Tennessee law was favorable to him, while the appellee insisted that the law of Arkansas should govern and that the case of *Hiner* v. *Whitlow* was controlling. Since we have overruled the *Hiner* case—a step that the appellee could not reasonably have been expected to anticipate—simple fairness requires that the appellee now be permitted to raise an issue that was not essential to its argument as long as the doctrine of the *Hiner* case remained unimpaired.

This contract of sale was made in Chattanooga, Tennessee, and it is not intimated that there was any effort on the part of the contracting parties to evade the law of Arkansas. (See Williston on Contracts [Rev. Ed.], § 1792.) Rather, this was apparently a *bona fide* Tennessee sale, pursuant to which the purchaser's interest was later assigned to the appellant. The present question is whether his right to attack the contract for usury should be determined by Tennessee law or by Arkansas law.

We think the Tennessee law governs. It has been pointed out that the assignment of a contractual right "may give the transferee, as between the parties to the transfer, the benefit of the right and authority to enforce it without necessarily in any other way putting him into the transferor's position with regard to the other contracting parties." Whether the assignment in fact has that effect is to be determined by the law of the place of contracting. Rest., Conflict of Laws, § 348. Again, "whether any rights, and if so what rights, of the assignor are transferable are determined by the law of the place where the contract is made." *Ibid.*, § 350. In Tennessee it has long been the rule that the defense of usury is personal to the debtor and cannot be asserted by one who purchases property encumbered by a usurious debt. *Nance* v. *Gregory*, 6 Lea 343, 40 Am. Rep. 41; *Parker* v. *Bethel Hotel Co.*, 96 Tenn. 289, 34 S. W. 209, 31 L. R. A. 706; *Deitch* v. *Staub*, 6th Cir., 115 F. 309. This being true, the circuit court was right in striking the plea of usury.

The petition for rehearing is granted, and the judgment is affirmed.

ED. F. McFADDIN, Justice (concurring on rehearing). I dissented from the Majority's original opinion, because I did not favor overruling Justice Battle's holding in *Hiner* v. *Whitlow*.

Now, I concur with the result reached by the Majority on rehearing; and I write this concurring opinion to emphasize that NOW all reference to *Hiner* v. *Whitlow* in the majority's original opinion is dicta and nothing but dicta.

By the rehearing opinion the Majority is holding that the contract here involved is not usurious because the contract is governed by the law of Tennessee. Such holding leaves as dicta *all* the language in the original majority opinion in regard to the Hiner case; and such dicta is not, in my way of thinking, sufficient to overrule the holding of Justice Battle in Hiner v. Whitlow.