## COCHRAN et al. v. SCHREIBER.

### (Circuit Court of Appeals, Fifth Circuit. March 19, 1901.)

### No. 1,010.

1. TRESPASS TO TRY TITLE—VERDICT—CONSTRUCTION—SUFFICIENCY TO SUPPORT JUDGMENT.

In trespass to try title, plaintiff claimed a described portion of lot 14, according to the T. survey, which subdivided a grant into lots. The statute of limitations was pleaded as a defense, but the underlying issue was whether such survey was actually made on the ground, and was valid, and should prevail, as to boundaries and lot lines, over a subsequent survey. The verdict was in favor of plaintiff "for the land in controversy, except that part of the northwest part of lot 14" which a defendant named had inclosed. It further found "for the defendant the small triangular shaped piece of land situate in said northwest corner of said lot 14, showing a width of about 16 feet on the north line of said lot 14, and running to a point in the west line of said lot 14 about 200 feet south of the northwest corner of said lot 14." *Held*, that the lot 14 referred to must be the lot 14, as bounded and described in the T. survey; that the triangular piece described in the second clause of the verdict was intended to be identical with the exception in the first clause; and that the word "about," twice used in the second clause, should be rejected as surplusage, so far as it tended to render the verdict vague or uncertain; and that, as thus construed, the verdict was not so vague, uncertain, and indefinite as to afford no basis for a valid judgment.

2. SAME—REVIEW ON APPEAL.

If, in trespass to try title, there is anything in the evidence regarding lot lines or fences or other matters tending to render the verdict vague or uncertain, it cannot be inquired into on an appeal raising a question as to its sufficiency in such respects; that being a matter to be dealt with by the trial court on a motion for a new trial.

3. REVIEW—DIRECTION OF VERDICT—REFUSAL—CONFLICTING EVIDENCE.

Where the evidence was uncertain and conflicting as to a material fact, and left the question in doubt, there was no error in refusing to peremptorily direct a verdict.

In Error to the Circuit Court of the United States for the Eastern District of Texas.

E. B. Parker, Jas. A. Baker, and R. S. Lovett, for plaintiffs in error.

C. B. Martin, P. K. Ewing, and G. W. Tharp, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge. This is an action at law, in the nature of trespass to try title to 60 acres of land, a part of the Luke Moore survey (a league of land), situated near the city of Houston, in Harris county, Tex. The suit was instituted on October 6, 1897, by Charles Schreiber, the defendant in error, against Jerome B. Cochran, W. J. Settegast, Jr., and Wilhelmine Helmke, the plaintiffs in

error, and the controversy resolved itself at last into a question of surveys and boundaries. The patent from the Mexican government to Luke Moore—of which the property in controversy is a part—bears date August 13, 1824. The Luke Moore survey is bounded on the west by the Tierwester survey, on the north by the S. M. Williams survey, on the northwest by the Wells survey. The northwest corner of the Luke Moore survey is a common corner for the Luke Moore survey, the Tierwester survey, the Wells survey, and the Williams survey. In 1838, Henry Trott, a surveyor residing in Houston at that time, subdivided the Luke Moore survey into lots of various sizes, and on the 15th day of June, 1838, a plat of these subdivisions, as prepared by him, was recorded in the record of deeds for Harris county, where it has remained from that day until now. The defendant in error claims that the plat made by Trott was the result of an actual survey of the land, while the plaintiffs in error claim that it is what is usually known as a "chimney-corner" survey, and not the result of an actual survey. The petition is in the ordinary form of trespass to try title, and the property in controversy is described therein by metes and bounds, as follows, to wit:

"Sixty acres of land, more or less, out of the Luke Moore league, and more particularly described as all that portion of lot No. 14 lying westward of the county road, of the Henry Trott subdivision of the west half of said league, beginning at an iron peg set at the corner of lots 10, 11, 13, and 14, from which a pin oak 12 inches in diameter, marked 'I,' bears S., 25½ degrees E., 42½ feet distant; also 646 feet S., 20 degrees W., of a fore and aft elm, standing on the line between lots 10 and 11; thence S., 70 degrees E., along the line dividing lots 11 and 14, 280½ feet, to a point in the center of the county road; thence S., 15 degrees 45 minutes E., 442 feet, to a point in the center of said county road; thence S., 20 degrees W., along the center line of the aforesaid county road, 4,840 feet, to a point on the north bank of Bray's Bayou, at the mouth of a small drain; thence up said Bray's Bayou, following the meanders of the same, to Siewerson's S. E. corner, being the common corner of lots 13 and 14; thence N., 20 degrees E., along the line dividing said lots No. 13 and 14, and following said Siewerson's line to his N. E. corner, passing the same at 2,540 feet, at 5,106½ feet, to the place of beginning. Said property is also described in a deed to plaintiff as lots 1, 5, 6, 10, 13, 14, 19, 20, 24, 25, 28, and 29 out of lot No. 14 of the west half of the Luke Moore league, according to plat in record of deeds for Harris county, Texas."

The defenses are (1) general demurrer and general denial; (2) plea of not guilty; (3) that the property in controversy is not part of lot 14, as claimed by defendant in error; (4) statute of limitation of five years; (5) statute of limitation of ten years.

Under the statutes of Texas, the defendant in the court below, under a plea of not guilty, may put in any defense except the defense of limitations, which must be specially pleaded. Under plea of not guilty, the plaintiffs in error offered evidence tending to prove that about the year 1860 Charles Kulbow, through whom the defendant in error claims, acquired the title to lot 14, and that about the year 1862 Christian Helmke, through whom the plaintiffs in error claim, acquired the title to lot 13; that soon thereafter the said Charles Kulbow and Christian Helmke agreed upon a dividing line between said two lots, and that ever since the making of such agreement, continuously until now, both of the parties thereto, and

those claiming through them, had acquiesced in and recognized such dividing line. Plaintiffs in error asked a peremptory charge upon this issue of an agreed line, but the court refused the charge, and submitted the question to the jury. The plaintiffs in error also offered evidence tending to prove that soon after acquiring lot 13, to wit, about the 18th day of June, 1860, Christian Helmke built upon and improved the north part thereof, including the south end of lot 10, also owned by him; that, in erecting his fences and other improvements, he inclosed a small portion of the property in controversy; and that continuously, since 1860, the said Christian Helmke, and those claiming through him, including the plaintiffs in error, had held the actual, adverse, peaceable, open, notorious, and exclusive possession of said property, claiming to the boundaries of the property in controversy, and all the time claiming, using, and enjoying said land as their property. The plaintiffs in error, under their plea of 10 years' limitation, asked the court below to instruct the jury peremptorily to find for plaintiffs in error. This the court refused to do, but submitted the issue of limitation, as well as all other controverted issues, to the jury.

Upon the pleadings as stated, the issues were submitted to the jury, who heard the evidence from day to day, six in all, and thereafter, on the 1st day of March, 1900, returned into court the following verdict:

"We, the jury, find for the plaintiff for the land in controversy, except that part of the northwest part of lot 14 that Mrs. Wilhelmine Helmke has inclosed in her present fence. We find for the defendants the small triangular shaped piece of land situated in said northwest corner of said lot 14, showing a width of about 16 feet on the north line of said lot 14, and running to a point in the west line of said lot 14, about 200 feet south of the northwest corner of said lot 14."

In due time plaintiffs in error filed motion for new trial, which was overruled. A bill of exceptions was allowed and filed, and the cause brought to this court by plaintiffs in error.

The assignments of error upon which plaintiffs in error rely are:

"(1) That the verdict of the jury is so vague, uncertain, and indefinite it cannot form the basis of a valid judgment. (2) That upon the issue of an agreed line claimed by plaintiffs in error to have been established and fixed by and between Charles Kulbow and Christian Helmke, and continuously thereafter recognized by them, the evidence is uncontradicted; therefore the jury should have been instructed peremptorily to find for plaintiffs in error. (3) That, upon the issue of ten-years limitation, the testimony is uncontradicted that the plaintiffs in error, and those through whom they claimed, went into possession of a portion of the property in controversy in 1862, and continuously thereafter used and occupied the same, claiming to the boundaries thereof, and therefore the jury should have been peremptorily instructed to find for plaintiffs in error."

The underlying issue in the case was whether the Trott survey and plat of the Luke Moore grant, under which the plaintiff below claimed, was a genuine, valid survey, and should prevail as to boundaries and lot lines over the Powers-Gillespie survey, made 22 years later, which varied from the Trott survey in respect to the west boundary of the grant and of the lots in controversy 125 varas. This

issue was submitted to the jury without objection, under the following instructions:

"The rule in regard to establishing boundary lines is that if from the evidence the jury believe that the survey was made, and was actually made upon the ground, and the land was plotted and sold with reference thereto, that the parties so purchasing hold the land so established upon the ground, and, if possible, from the evidence, it is the duty of the jury to follow the footsteps of the surveyor. But if from the evidence the jury don't believe that the land was actually surveyed upon the ground, and the subdivision lines actually run and marked and established, then it would be regulated ordinarily, in the absence of the agreement of parties, by course and distance. Therefore, in deciding this case, you will determine, first, whether or not the land in dispute was actually surveyed on the ground, and the boundary lines established thereon, by Henry Trott; and, if you decide that it was actually surveyed upon the ground, then you are to decide from all the evidence in the case where the true dividing line was between lots 13 and 14; and, if you believe from the evidence that it was in accordance with the plaintiff's contention, your verdict should be for the plaintiff, unless you find as hereinafter instructed. But if you find that it was actually surveyed upon the ground, but is in accordance with the contention of the defendants, in that event your verdict should be for the defendants. As stated, the plaintiff's contention is that this west half of the Luke Moore survey was surveyed for a plot by Henry Trott, and the lines marked and established upon the ground. That is the plaintiff's contention, and, if you find that to be the fact, then the lines would run in accordance with that survey, it being the older survey, and the parties' right would be determined by wherever you may decide or find from the evidence those lines to exist upon the ground. But if Henry Trott didn't survey it on the ground, and it was simply an office survey, or paper survey, then you are to determine from the evidence offered whether it was subsequently surveyed by any one else,—Powers, or any other person. If you believe from the evidence Trott did not actually survey it upon the ground, but that Powers did actually survey it upon the ground, and marked the division lines between the respective lots, in that event you would hold to those lines. It is for you to determine, from all the evidence offered, if this ground was actually surveyed. If you determine it was actually surveyed, you are to determine who surveyed it. If Trott surveyed it, then, in the absence of any agreement between the parties, or the defeat of anybody's right by the statute of limitations, the parties would hold to the Trott lines. But if Trott did not actually survey it, but Powers did actually survey it, then, in the absence of an agreement or defeat of statute of limitation or otherwise, the parties would go to the Powers line. If you find from the evidence that Trott did not survey it upon the ground, then you are to determine from the evidence whether or not Powers surveyed it upon the ground. If Powers did not survey it upon the ground, then you are to determine, from all the evidence offered before you, as to where the true lines were. But, if you determine Powers did survey it upon the ground, then the parties' right will go to those lines, unless they were defeated by reason of some other matter."

Under these and other instructions not bearing on the survey question, the jury found "for the plaintiff for the land in controversy, except," etc. Now, as the plaintiff below in his petition claimed under the Trott survey, and as under the instructions above given a verdict in his favor could only be returned in case the jury found the Trott survey to have been actually made on the ground, it is very certain that the lot 14 referred to in the verdict is the lot 14 as bounded and described in the Trott survey. We think it apparent on the face of the verdict that the triangular shaped piece of land found for the defendants in the last clause is and was intended to be identical with the excepted part from the lands in controversy described in the first clause as "that part of the

northwest part of lot 14 that Mrs. Wilhelmine Helmke has inclosed in her present fence."

The word "about," twice used in the last clause of the verdict in connection with the description of the lots, is to be rejected as surplusage, so far as it tends to render the verdict vague or uncertain. Bodley v. Taylor, 5 Cranch, 224, 3 L. Ed. 75; Johnson v. Pannels' Heirs, 2 Wheat. 206, 4 L. Ed. 221; Shipp v. Miller's Heirs, 2 Wheat. 316, 4 L. Ed. 248.

The trial court did not apparently have any difficulty in rendering an intelligent judgment, based on the verdict and the pleadings in connection therewith, and the judgment so rendered seems correct in all respects. If there was anything in the evidence with regard to lines or fences or other matters which tended to render the verdict vague and uncertain, it is a matter wholly beyond our inquiry, and could only have been dealt with by the trial court on a motion for a new trial.

The second contention of the plaintiffs in error seems to be in the nature of an appeal from the trial court and jury on a question of fact. The instruction given the jury on the issue of an agreed boundary line was lucid and full, so far as the law involved was concerned, and appears only to have been objected to on the ground that the court did not go further, and, for the reason that the evidence was uncontradicted and established the agreed boundary line as claimed by the defendants, instruct the jury peremptorily to find for the defendants. Evidently, neither the jury nor the trial judge considered the evidence undisputedly in favor of the defendants; for the one found, and the other sustained, a verdict to the contrary.

The case was argued in this court by counsel on both sides, who did not participate in the trial before the jury, and their briefs are so conflicting that to determine the facts proved an examination and analysis of the entire evidence, as presented in 376 printed pages of the transcript, has been rendered necessary. From our examination, we conclude that the question was not so much that of an agreed boundary as of a boundary acquiesced in, and in regard to which the evidence of the defendants below is from interested sources, and is uncertain, inferential, and somewhat conflicting in itself, and that the evidence offered by the plaintiff below in opposition tends directly to contradict and partially overthrow the defendants' pretension as to either an agreed or an acquiesced in boundary. To recapitulate the evidence, and point out in full the discrepancies, uncertainties, and conflicts, would take more space and time than we are disposed to give, and would, besides, be of no value in any other case.

As we find the evidence was uncertain and conflicting, and that the question, under all the authorities, ought not to have been withdrawn from the jury, we do not feel called upon to review the many decisions cited and dealing with the question when and under what circumstances should the trial court withdraw a case from the jury and peremptorily direct a verdict.

As to the third contention, that the proof was uncontradicted in

regard to the 10-years statute of limitation, we find from an examination of the evidence that the question of exactly what and how much Mrs. Helmke and her successors occupied and possessed and exercised ownership over under a claim of title is as much in doubt as the question of an agreed boundary, and that under all the circumstances it was a matter very properly left to the jury. The judgment of the circuit court is affirmed.