**Appeal of EDWARD L. SCHEIDEN-**        Docket No. 1223.
**HELM CO.**

Where the taxpayer's sole witness admits that a portion of his
testimony was false, the Board may regard all of his testimony as
having no weight in establishing error on the part of the Com-
missioner in determining a deficiency in tax.

Submitted March 17, 1925; decided March 23, 1925.

*Samuel T. Ansell, Esq., George M. Wilmeth, Esq.,* and *Charles
Kersherbaum, C. P. A.,* for the taxpayer.
*George K. Bowden, Esq.,* for the Commissioner.

Before GRAUPNER, LANSDON, LITTLETON, and SMITH.

This appeal involves a deficiency in income and profits taxes for
the year 1918 in the amount of $12,221.95. It first came on for hear-
ing before this Board on February 24, and was adjourned to March
17, 1925, in order that the taxpayer might produce its books of origi-
nal entry. Oral and documentary evidence were produced at the
hearings on both dates and, from the credible evidence, the Board
makes the following

FINDINGS OF FACT.

1. The taxpayer is an Illinois corporation with its principal place
of business in the city of Chicago. Edward L. Scheidenhelm is its
president and has been such since the organization of the corporation
in 1916 and is, and has been at all times since its organization, the
owner of substantially all of the stock therein.

2. The Scheidenhelm Construction Co., hereinafter called the
Company, was organized under the laws of the State of New York,
and had its principal place of business in the city of New York.
Scheidenhelm was president of this corporation and owned sub-
stantially all of the stock therein.

3. Both the taxpayer and the Company were organized by Schei-
denhelm for the purpose of contracting for and performing con-
struction work. During the year 1916 the Company entered into
two contracts—one for the construction of a building, on Long
Island, N. Y., for the Packard Motor Car Co., and the other for the
construction of a pier for the State of Connecticut, at New London
in that State. These were the only construction contracts entered
into by the Company during its existence. In respect of the Packard
Motor Car contract, Scheidenhelm, as president, signed the tax-
payer's name as surety on a bond in the sum of $327,284 given by
the Company to the Packard Motor Car Co. conditioned on the faith-
ful performance of said contract. In respect of the New London
pier contract, Scheidenhelm, individually, signed an undertaking to
indemnify the United States Fidelity & Guaranty Co. of Maryland,
a corporation engaged in the business of indemnity insurance, in
the amount of $97,500 by reason of its having become surety on
two bonds aggregating that sum given by the Company to the State
of Connecticut for the faithful performance of said contract.

4. In the calendar year 1917 the Company became financially involved, and by September 1 of that year it had exhausted its funds and was unable to proceed in the performance of the contracts into which it had entered. On September 1, 1917, the office of the Company in New York was closed and its books and records were removed from the State of New York. The charter of the Company was surrendered and the corporation was formally dissolved in September, 1919.

5. Upon the failure of the Company to complete its work on the two contracts, the taxpayer completed the contracts undertaken by the Company. Work on said contracts was completed and final settlement effected in July, 1918. Upon the final adjustment and settlement it was ascertained and determined by the taxpayer that it and the Company had suffered a loss on account of the completion of said contracts in the amount of $51,321.60, and the taxpayer sought to deduct as a loss for the year 1918 the sum of $24,931.71, which it claimed was chargeable solely against it.

6. The Commissioner held that the taxpayer and the Company were affiliated in 1918; that the completion of the contracts of the Company by the taxpayer constituted an intercompany transaction; that both companies had adopted the method of reporting income from long-term contracts on the basis of estimated receipts and expenditures for each year such contracts ran; and, therefore, that the total loss sustained by both companies, amounting to $51,346.60, should be allocated on the basis of corrected expenses over the entire period covered by the contracts. Under this adjustment the deduction claimed by the taxpayer for 1918 is reduced from $24,931.71 to $7,598.03, which reduction is the basis for the deficiency of $12,-221.95 determined by the Commissioner and from which the taxpayer has appealed to this Board.

### ANCILLARY FINDINGS.

(a) In its endeavor to establish its contention that the taxpayer was obligated as a surety to complete the contract of the Company with the State of Connecticut, the taxpayer introduced in evidence purported minutes of a meeting of its board of directors, held at its office in Chicago, Ill., July 13, 1916. These minutes contained a resolution which purports to have been adopted at said meeting whereby the president of the taxpayer was authorized to become surety on any bond or bonds required by the State of Connecticut of the Company, and also authorized him to sign any indemnity agreement required by· any surety company in connection with any such bonds, and in the event he signed or was required to sign any such indemnity agreement personally that the same should be deemed to have been ratified by the Company and binding upon it.

(b) The aforesaid minutes were identified by Scheidenhelm, who testified that they were written up " *immediately after the meeting of the board.*" The minute book of the taxpayer was submitted by counsel for the Commissioner to the inspection of the members of the Division of this Board who heard the appeal. On inspection, it was very evident that the pages of the minute book containing the purported minutes of July 13, 1916, were new and of a paper entirely

61359°—26——55

different from that on which the other minutes contained in the book were written; also, that the ink with which the signature of the secretary was affixed to such minutes was fresh and had not darkened through age.

(c) After the hearing had closed and counsel for the taxpayer had made his opening argument, Samuel T. Ansell, Esq., one of counsel for the taxpayer, requested, as a matter of personal privilege, that Scheidenhelm be recalled to the witness stand. Thereupon, and on examination by counsel and the members of the Board, Scheidenhelm testified that said minutes of July 13, 1916, were not written until sometime subsequent to February 24, 1925, and that no resolution (such as is described in ancillary findings of fact (a)) was presented to the alleged meeting of directors on July 13, 1916.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

GRAUPNER: The taxpayer, in its petition, asserts error on the part of the Commissioner in the following details: (a) In affiliating the taxpayer and the Company for the taxable year 1918; (b) in holding that the taxpayer was not liable as a surety on the contract of the Company with the State of Connecticut; (c) in holding that the contracts entered into by the Company were intercompany transactions; and (d) in prorating the losses which the taxpayer contends that it suffered in completing the contracts over the period of time covered by said contracts, viz, over the years 1916, 1917, and 1918, instead of allocating the losses to the year 1918.

At the conclusion of the taxpayer's offer of proofs on its behalf, the attorney for the Commissioner moved to dismiss the appeal on the ground that the taxpayer had failed to establish its allegations of error. On account of the suspicious conditions developed at the hearing, and not because of lack of merit in the motion, the Board here denies the motion in order that decision may be made on grounds which deserve our serious consideration and comment.

As we view this particular appeal, all of the contentions of the taxpayer may be determined without special analysis of each of the assignments of error. We are compelled to deny the appeal of the taxpayer because the conduct of its president and principal stockholder, who was the sole witness at the hearing, has been such as to cause this Board to doubt or disbelieve the major portion of the testimony given by him on the witness stand.

Section 900 of the Revenue Act of 1924 designates this Board as " an independent agency in the executive branch of the Government." Notwithstanding this description, the requirements of the section vest this Board with the main attributes of a court and make it a tribunal, entitled to respect and charged with great responsibilities. These responsibilities require the Board to mete out justice to the taxpayer and at the same time to protect and expedite the collection of the revenues. The Board can not exercise its functions if it is hampered by suspicion or confronted with deceit or chicanery. We have the right to expect and rely upon taxpayers seeking relief

to fully, frankly, and *honestly* present all the facts relating to their assignments of error on appeal. Suppression of facts, distortion of testimony, falsification or alteration of documents or records, and perjury deter us from performing the duties with which we are charged and lead to injustice. Such acts constitute fraud on the Board and the Government, and we can not too strongly condemn them and the results flowing therefrom.

In this appeal the taxpayer first came before this Board without the original books of account of the two corporations involved. Adjournment of the hearing was granted to enable it to produce its books before the division hearing the appeal. The books were present in the hearing room when the appeal was heard after the adjournment. None of the books of account were offered in evidence, the witness for the taxpayer was asked to and did read into the record only a part of the debit entries and none of the credit entries in one ledger account, and counsel for the Commissioner was permitted by the taxpayer to make only a restricted examination of the books brought into the hearing room.

The issues presented depended to a great degree upon proving the authority of the taxpayer to become a surety and, having apparently become a surety, its responsibility to complete contracts which could only be performed at a loss. The articles of incorporation of the taxpayer and the Company were not introduced to show their corporate powers, the accounts were not sufficiently disclosed to give the Board an adequate understanding of the transactions involved, and the minutes of the taxpayer were distorted or manufactured to the advantage of the taxpayer. Such a method of presentation does not encourage belief in the merits of the appeal.

The president of and sole witness for the taxpayer positively and unequivocally identified, as minutes of a purported meeting of the board of directors of the corporation, supposedly held on July 13, 1916, pages in the minute book of the taxpayer. The distinct difference in appearance between the pages of that book containing the purported minutes and the other pages excited the comment of the attorney for the Commissioner, who called the attention of the Members sitting at the hearing to the fact. The appearance of recent substitution or alteration was so evident to the Members on inspection of the book and their surprise was so manifest that, undoubtedly, Scheidenhelm was aware of the attention which the condition excited. The minute book had not been placed in evidence and the witness, after making positive identification of it, had read the purported minute into the record. Whether this method was employed to conceal the newness of the pages and the secretary's signature, we can only surmise. But for the reference of Commissioner's counsel to the book for purposes of cross-examination we would have remained in ignorance of the condition existing. It may be said, therefore, that what appears to be an attempted fraud upon the Board and an attempted perversion of justice was accidentally discovered and would not have been revealed to the Board had not Commissioner's counsel called attention to the peculiar appearance of the pages which were read into the minutes.

From the circumstances surrounding the disclosure of the fact that the purported minutes were not written until after the adjournment of the first hearing of the appeal, when the taxpayer's president had

knowledge that he must produce original records, we are convinced that confession would not have been made of the addition to or alteration of the taxpayer's minutes had he not been aware and convinced that the Members were confident that the record had been manufactured. With this unavoidable conception of the attitude of the taxpayer in testifying before the Board, we feel that the testimony contains sufficient other products of deceit to justify us in disregarding all the testimony of the witness, Scheidenhelm. As there was no other witness produced, we feel that there is no evidence before the Board to warrant us in disturbing the Commissioner's determination.