NORTHERN TRUST CO., EXECUTOR OF THE LAST WILL AND TESTAMENT OF ELLEN L. VAN SCHAICK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7127. Promulgated November 14, 1927.

*Frederic Ullmann, Esq.,* for the petitioner.
*J. F. Greaney, Esq.,* for the respondent.

OPINION.

STERNHAGEN: The decedent died on April 11, 1923, and the Revenue Act of 1921, then in effect. imposed an estate tax upon the transfer of her net estate above $50,000. The estate made its return and paid tax of $13,088.54. Thereafter the respondent required the inclusion within the gross estate of the value at the date of death of the property which had theretofore been conveyed in trust by the four instruments summarized in the findings, consisting of various parcels of real estate and certain shares of stock, thus increasing the net estate and determining a deficiency in tax. The petitioner seeks here a redetermination that there is no deficiency because the value of the trust property is not properly part of the gross estate under the statute and may not be taxed as such under the Constitution.

The Revenue Act of 1921, Title IV, imposed an estate tax, section 401, effective upon its passage, section 1404,[1] in lieu of a like tax in the Revenue Act of 1918, which was repealed, section 1400.[2] The earlier estate taxes were likewise repealed by the Revenue Act of 1918, section 1400,[3] so that at the time of the death of the present decedent in 1923, the Revenue Act of 1921 alone was in force, and this was effective only from its passage on November 23, 1921. It is necessary, therefore, to consider only the provisions of this statute in

---

[1] SEC. 1404. That except as otherwise provided, this Act shall take effect upon its passage.

[2] SEC. 1400. (a) That the following parts of the Revenue Act of 1918 are repealed, to take effect (except as otherwise provided in this Act) on January 1, 1922, subject to the limitations provided in subdivision (b) :

\* \* \* \* \* \* \*

Title IV (called " Estate Tax ") on the passage of this Act; \* \* \*.

[3] SEC. 1400. (a) That the following parts of Acts are hereby repealed, subject to the limitations provided in subdivision (b) :

(1) The following titles of the Revenue Act of 1916 :

\* \* \* \* \* \* \*

Title II (called " Estate Tax ") ;

\* \* \* \* \* \* \*

(2) The following parts of the Act entitled "An Act to provide increased revenue to defray the expenses of the increased appropriations for the Army and Navy and the extensions of fortifications, and for other purposes," approved March 3, 1917 :

Title III (called " Estate Tax ") ;

\* \* \* \* \* \* \*

(3) The following titles of the Revenue Act of 1917 :

\* \* \* \* \* \* \*

Title IX (called " War Estate Tax ") ; \* \* \*.

order to consider whether a tax has been imposed, *Charles L. Harris, Administrator*, 5 B. T. A. 41. With omissions of unnecessary matter, the pertinent provisions are:

SEC. 401. That, in lieu of the tax imposed by Title IV of the Revenue Act of 1918, a tax equal to the sum of the following percentages of the value of the net estate (determined as provided in section 403) is hereby imposed upon the transfer of the net estate of every decedent dying after the passage of this Act, * * *.

SEC. 402. That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

*       *       *       *       *       *       *

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death (whether such transfer or trust is made or created before or after the passage of this Act), except in case of a bone fide sale for a fair consideration in money or money's worth. * * *

Section 403 prescribes the deductions to be made from the gross estate to arrive at the value of the taxable net estate.

The Commissioner has held that the property covered by the four trusts was the subject of transfers or trusts " intended to take effect in possession or enjoyment at or after [her] death," and that therefore its value at the date of death was within the gross estate.

Respondent's counsel in support of this determination makes no distinction among the four transfers. But clearly, if the statute applies at all, it must be for different reasons as to the two later transfers from those applicable to the two earlier. The 1912 transfer reserves to decedent the income for life, as did the 1917 transfer, which merely increased the *res*. The 1919 and 1921 transfers reserved nothing to the decedent but required the accumulation of the income for her descendants until she died or for 21 years if she did not die before then. In all trusts the corpus was irrevocably transferred from the decedent.

We consider first the 1919 transfer. If it were not for the provision that the accumulation should cease and the distribution be made at decedent's death within 21 years, the instrument would be like that in *Shukert* v. *Allen*, 273 U. S. 545; 6 Am. Fed. Tax Rep. 6550, and the property would not be within the statutory gross estate. In that case the accumulation was to carry on for 30 years, irrespective of the grantor's death. The instrument was made in 1921, less than five months before the testator's death. The Supreme Court, after finding that the transfer was immediate and vested the interest in the beneficiaries at the time of execution, said:

* * * But it seems to us tolerably plain, that when the grantor parts with all his interest in the property to other persons in trust, with no thought of avoiding taxes, the fact that the income vested in the beneficiaries was to be

accumulated for them instead of being handed to them to spend, does not make the trust one intended to take effect in possession or enjoyment at or after the grantor's death.

Is the present transfer brought within the statute by the additional fact that the period of accumulation was limited by the creator's death if within 21 years? The transfer was no less complete; the interests of the trustee and of the beneficiaries were no less vested; the possession or enjoyment had as effectually passed from the decedent; there was, *non constat*, no more thought of avoiding taxes. There was the possibility that the distribution would be made before death if the creator of the trust should live more than 21 years, unless it is to be said as law that a person of 73 may not entertain that hope. There is here no reason to believe that in fact the testatrix expected to die earlier.

The fact of the testatrix's death served only as an alternative limitation of the time of accumulation, the other alternative being the end of the 21 years. The transfer had already become completely effective, so far as it affected her. Her disposition was complete and beyond recall. If she had transferred to A until her own death with remainder to B, could the property be included within her estate, merely because B's actual possession was postponed? It seems clear that unless there were some other evidence that the transfer was testamentary it would be treated for all purposes as complete when made and beyond the reach of estate taxes. It is no less so here. The intervention of an accumulating trust makes the transfer no less complete. The trustee takes possession immediately, accumulates the income for the period until testatrix's death or for 21 years, and then distributes the income periodically throughout the lives of the beneficiaries. It has been held by the Commissioner that thus the value at death of the entire trust *res* transferred four years earlier at an undisclosed value was within section 402 (c). This determination is reversed, and the property transferred in 1919 and 1921 is held not to be within the gross estate.

We take up then, the earlier transfer made in 1912 and that made to the same trust in 1917. The significant feature of these transfers, the one which it is said by the Government brings the property within the gross estate, is that the decedent reserved to herself the right to receive the income during her life, and directed that thereafter it should go to her children during their lives. The final distribution of the trust property was to be made to the grandchildren, but not earlier than the death of the last surviving child or the twenty-first birthday of the youngest living grandchild. Like the transfers of 1919 and 1921, there is no evidence whatever that these transfers of 1912 and 1917 were actuated by a purpose to avoid taxes.

The earlier was made when no Federal death tax was imposed. The second was made while the tax of 1916 (repealed as above stated by the Act of 1918) was in force. It does not appear what was the value of the property when transferred, the value at the time of death being the only figure regarded by the Government as significant.

The case seems to depend upon the validity under the Constitution of the statute, for as said by Judge Hand in *Frew* v. *Bowers*, 12 Fed. (2d) 625, the possession or enjoyment is different from the legal vesting, and can not in any event take effect until the grantor's death. Unlike the transfer of 1919 and unlike that of *Shukert* v. *Allen*, *supra*, there is no chance that a fixed event may bring about the possession or enjoyment of any part of the property, whether of the succeeding life interest of the children or grandchildren or of the remainder interest of the surviving grandchildren, prior to the death of the grantor.

The prototype of the provision in question as it appeared in the Revenue Act of 1918 was considered by the Supreme Court in *Nichols* v. *Coolidge*, 274 U. S. 531; 6 Am. Fed. Tax Rep. 6758, and in so far as by its retroactive effect it attempted to bring within the gross estate property which had been transferred in 1907 it was held to be too capricious an exercise of the taxing power. And in *Frew* v. *Bowers*, *supra*, the Circuit Court of Appeals, Second Circuit, held the same. In both those cases, the grantor had disposed of the income as well as the remainder, while here she kept the income for her life. The Supreme Court, so far as can be gathered from the opinion, did not look upon this as controlling; for aside from the statement of the fact, it nowhere enters into the discussion. The opinion seems rather to condemn *in toto* the attempt to reach back and bring into the gross estate any property which had by such a trust been transferred before the passage of the Act. The concluding sentences are:

\* \* \* And we must conclude that section 402 (c) of the statute here under consideration, in so far as it requires that there shall be included in the gross estate the value of property transferred by a decedent prior to its passage merely because the conveyance was intended to take effect in possession or enjoyment at or after his death, is arbitrary, capricious and amounts to confiscation. Whether or how far the challenged provision is valid in respect of transfers made subsequent to the enactment, we need not now consider.

In view of the repeated and well established rule that constitutional questions will be avoided wherever possible, and the decision of the District Court that the transfers in question were within section 402 (c), it must be assumed that the Supreme Court so treated them. Hence it is unnecessary for us to consider here whether the transfers of 1912 and 1917 were within the statute, for even assuming that they were, they could only be reached by the retroactive clause of the pro-

vision. We see no escape, after the Supreme Court's decision as to the 1918 Act, from the conclusion that the 1921 Act is subject to the same infirmity, and we must therefore reverse the Commissioner. See *Edward H. Alsop*, 7 B. T. A. 848, and *James Duggan, Executor*, 8 B. T. A. 482.

The property transferred by the four instruments should be excluded from the gross estate.

> *Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by ARUNDELL.