GARDEN CITY FEEDER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 24423. Promulgated April 10, 1933.

*H. M. Havner, Esq.*, and *A. F. Schaetzle, Esq.*, for the petitioner.

*Harold Allen, Esq., L. H. Rushbrook, Esq.*, and *James M. Adams, Esq.*, for the respondent.

OPINION.

GOODRICH: This case has been twice tried. The first hearing was opened on circuit at St. Paul, Minnesota, and, after extending for some days, was continued and transferred to the Washington, D. C., calendar where it was later completed. A voluminous record, including various exhibits and depositions, was made at this hearing. Within a few days after the trial was completed, before the transcript was made up or briefs were filed, the Member who sat as a Division to hear the case was stricken suddenly and died. Thereafter, respondent filed a motion for a rehearing, asking also that, except for certain depositions, all the evidence received at the first hearing be rejected or suppressed. As grounds for his motion respondent recited the death of the presiding Member and claimed that, because of his illness, the Member during trial was laboring under an evident physical and mental disability which markedly interferred with his ability to properly conduct the case, with the result that the record was confused, befogged, erroneous and useless. He alleged also misconduct on the part of counsel for petitioner during trial. This motion was resisted by petitioner which, by counsel, contended that the presiding Member was fully capable of hearing the case and conducted the trial properly; that respondent, because he presented his case, was now estopped from moving to reject the record; that petitioner had incurred heavy expense in appearing at the first hearing, and was unable to again bear that cost, and that the record therein was complete, satisfactory and sufficient to serve as a basis for decision of the issues. Further, petitioner denied misconduct of its counsel during trial but asserted misconduct on the part of respondent's counsel.

Both parties, by counsel, were heard in argument upon this motion. Thereafter the full Board considered all phases of the motion and decided that a rehearing should be granted. Accordingly, an order was entered granting respondent's motion, and the case was set for trial on the circuit calendar at St. Paul at petitioner's request. Before the date of trial, petitioner filed a motion which, as amended, prayed for an order submitting the case upon the record as made at the first hearing. This motion being resisted by respondent, the parties were heard on argument and permitted to file briefs, after consideration of which the motion was denied and counsel advised that only such parts of the record made at the first trial as might be properly introduced in evidence at the second trial would be considered. Thereafter, by agreement of the parties, and in order to spare them expense and inconvenience, the case was transferred to the trial calendar at Washington, D. C., and set for hearing.

At trial, both parties appeared by counsel. Petitioner, when called upon to introduce evidence in proof of its case, objected to the taking of any additional testimony on the ground that all testimony had theretofore been taken and trial closed, and that the record contained nothing to indicate that further testimony should be taken. This objection raised no issue not previously considered, both upon respondent's motion for new trial and upon petitioner's motion to submit the case upon the former record, and was overruled, to which petitioner excepted. Again petitioner was specifically called upon for proof of its case, whereupon its counsel again insisted that the case be submitted upon the record as made, stating:

We offer no proof at this time, except the record itself as it now stands, * * * and ask the Board to consider the record as originally made in this case.

Counsel then added that he was not offering the former record in evidence, but urged that the case be decided upon it. Again counsel moved that all the testimony theretofore offered in the case by petitioner be considered, stating that it would rest on the record as made.

Whether petitioner's statements, which are conflicting, amount only to a renewal of its previous motions to submit the case upon the former record or effect an offer *in toto* of the evidence taken at the former trial is not clear. However, the motion was overruled, whereupon counsel excepted, and refused to offer any further evidence, either by witnesses personally appearing, by the testimony of any particular witness formerly taken, or by particular deposition or exhibit. Then respondent, being called upon, proceeded to introduce evidence in support of the affirmative allegations of his amended answer, to all of which petitioner objected generally and was overruled. While petitioner's continuing general objections to the introduction of respondent's evidence were overruled, certain of its specific objections made to questions asked the witnesses or documents offered were deemed proper and were sustained. Petitioner participated in the trial as thus indicated and by the exercise of its right to cross-examine respondent's witnesses.

Since petitioner introduced no evidence, we must sustain respondent's determinations of deficiencies as set out in the original notice of deficiency and give him judgment thereon because of failure of petitioner's proof and, consequently, we need not here consider the issues raised in opposition to respondent's original determinations, nor need we concern ourselves with the facts thereunder. In so holding we are deciding adversely to petitioner's principal contention, which is that our decision in this case must be based upon the evidence taken at the first trial. Petitioner denies that we have the power to order a new trial in any cause, or that we may dis-

regard, reject or suppress evidence once introduced before us. It further urges that, even conceding our authority to order a new trial, still all the evidence previously taken must be considered as a part of the record because such evidence is a public record which we can not overlook and, secondly, because this Board, being by statute bound by the rules of evidence pertaining to courts of equity in the District of Columbia, may receive and consider upon new trial only such evidence as would be received and considered by such courts in a similar situation. In other words, petitioner regards us as a court of equity, permitted to order a rehearing only under those conditions in which such a court could do so, and then, having done so, subject to the general restrictions obtaining to such a court that no evidence may be gone into which was in the case at the original hearing or capable then of being produced; that no witness orginally examined before the master may be reexamined without special order of the court, and that such an order, if obtained, is limited to facts not testified to by the witness and not then in issue, citing *Jenkins* v. *Eldredge*, 3 Story, 299; 13 Fed. Cases 504; *Read* v. *Patterson*, 44 N. J. Equity 211; *Scales* v. *Nichols & Scales*, 2 Yerger's Reports 126; 10 Tenn. 126; *Buffington* v. *Harvey*, 95 U. S. 99; *Whiting* v. *Bank of United States*, 13 Pet. 6; *Deitch* v. *Staub*, 115 Fed. 309.

The problem raised by petitioner is a serious one. It arises because of the confusion surrounding the status of this Board, its powers, its jurisdiction and its functions, and it is serious because upon its determination depends the correctness of our action upon a considerable number of cases. We are often importuned, both by the Government and by taxpayers, by motions for reopening of cases, both before and after decision has been entered, for the purpose of obtaining new trial, reconsideration, permitting of further argument, and the introduction of further evidence or the correction of inadvertent mistakes. We have been, and are, passing upon such motions as our discretion dictates in an attempt to discharge our duties as we conceive them to be, and on occasion for good cause shown, have granted such motions and taken such further action in proceedings before us as seemed necessary to a just determination of the claims of the parties. Generally, the parties have attributed to us, as a matter of course, the authority necessary to act in such matters, apparently assuming that any tribunal which can hear and determine a controversy has the inherent power to rehear and redetermine it. But, although no issue has been made of it before the courts reviewing our decisions, our power has not been entirely unchallenged nor free from comment.[1] The issue was squarely

---

[1] "New Trials and Rehearings in the Board of Tax Appeals." Arthur B. Hyman, Esq. The Tax Magazine, September, 1932.

raised in the case of *Continental Oil Co.*, 23 B. T. A. 311, by petitioner in opposing a motion for rehearing filed by the Government but was not there decided, for the case was disposed of upon other grounds. It was recently suggested by the United States Circuit Court of Appeals for the Fourth Circuit in its decision in *Lexington Ice & Coal Co.* v. *Burnet*, 62 Fed. (2d) 906, that we should promulgate rules for such motions. This we had deemed unnecessary, believing those matters to lie entirely within our discretion, but, be that as it may, the fact remains that such requests, many numerically, though few in proportion to the total number of proceedings before us, are submitted to us and we pass upon them. Therefore, it is essential that our power therein be determined, for, certainly, we will not consciously assume and exercise an authority which we do not lawfully possess.

A study of the legislative history surrounding the creation and enlargement of the Board reveals the intention and understanding of the Congress with respect to its jurisdiction and powers. With the various changes made by the Congress to the original plan of organization, with its character as it existed under the Revenue Act of 1924, when proceedings before it were in the nature of a " preliminary skirmish,"[2] we are not here concerned, for it is apparent that in enacting the provisions of the Revenue Act of 1926 affecting the Board, and particularly that giving the Board jurisdiction to determine the correct amount of a taxpayer's liability, either as a deficiency or an overpayment, the Congress was content that it had established the Board as a legislative (in contradistinction to constitutional), inferior tribunal, having judicial powers within its limited jurisdiction and capable of handing down, not merely administrative determinations, but judicial decisions. See *Edward L. Scheidenhelm Co.*, 1 B. T. A. 864; *Southern California Loan Assn.*, 4 B. T. A. 223.

This the Congress apparently believed it had power to do,[3] and it seems clear that the name by which it was designated has no effect

---

[2] *Blair* v. *Oesterlein Machine Co.*, 275 U. S. 220; *Williamsport Wire Rope Co.* v. *United States*, 277 U. S. 551; *Blair* v. *Curran*, 24 Fed. (2d) 390; *Brampton Woolen Co.* v. *Field*, 56 Fed. (2d) 23.

[3] " The power of Congress to create tribunals for the determination of judicial questions is not confined to the creation of inferior courts under Article III of the Constitution.

" The third class of federal tribunals includes those courts and other tribunals created to determine judicially questions arising between the United States as a sovereign government and private individuals, with reference to the exercise of sovereign powers in connection with its own revenues, grants, debts, military forces, duties toward Indian tribes, and the like.

" The territorial courts and special tribunals are commonly referred to as ' legislative tribunals ' in contradistinction to the so-called constitutional courts.  *  *  *  The term ' legislative tribunal ' applies to all tribunals of the above character whether they have been specifically placed in the Executive Branch of the Government, as in the case of ad-

upon the nature of the powers of the tribunal.[4]  In the discussion of the bill by the Ways and Means Committee of the House [5] the following appears relative to provisions affecting appeals of Board decisions:

* * *  No other court in the world tries cases which in the aggregate involve such great amounts.  * * *  Under the new appellate procedure from the board (hereinafter discussed) the jurisdiction of the board in tax matters is similar to that heretofore held by judges of the Federal district courts.  * * *

*Court Review—Questions of fact and law.*—The procedure is made to conform as nearly as may be to the procedure in the case of an original action in a Federal district court.  * * *

In the view of the committee the decisions of the board are judicial and not legislative or administrative determinations.  * * *  The imposition upon the court of the duty of reviewing judicial decisions, such as those of the board, is not the imposition of a non-judicial duty,  * * *.  Such review of a judicial, as distinguished from a legislative or administrative determination may be had as to either questions of law or of fact.  The proposed procedure, however, for reasons of policy and not of law, limits court review solely to questions of law as heretofore described.

A similar statement is contained in the report of the Senate Committee on Finance.[6]

Again, when considering the Revenue Bill of 1928, the view of the Congress was expressed in the following excerpts from the reports [7]:

A recent decision by the circuit court of appeals for the seventh circuit indicates that there is some disposition to regard the Board of Tax Appeals as an investigative *rather than a judicial body*, and to require it to reach its decisions not merely on the basis of the evidence presented in the record, but on the basis of such additional evidence outside the record as may be necessary fully to develop the taxpayer's case.  *The committee is of the opinion that the board's function is purely judicial*, and in order to clarify the situation has provided that no decision of the board (whether rendered before or after the bill becomes law) should hereafter be modified or reversed because the board or any of its divisions has failed to consider evidence not adduced before the board or division.  *At the same time the committee has provided that the rules of practice and procedure of the board shall, just as the Federal equity rules, have the force and effect of law.*  [Italics supplied.]

On this proposal the Senate Finance Committee expressed itself thus [8]:

In view of certain expressions in a recent court opinion, the House bill in Section 601 provides that no decision of the board shall be modified or reversed

ministrative tribunals, or whether they may be considered as a part of the Judicial Branch of the Government as in the case of the District of Columbia.

" Legislative tribunals are often authorized by statute to exercise jurisdiction the same as or similar to that exercised by Federal constitutional courts, and in that sense they are vested with judicial power that is similar to the judicial power of such constitutional courts."  [See brief prepared by H. R. Judiciary Committee, 68 Cong. Rec. 3187, and cases there cited.]

[4] *Goldsmith* v. *Board*, 270 U. S. 117, citing *Manning* v. *French*, 149 Mass. 391.

[5] H. R. #1, 69th Cong.. 1st sess.. p. 17.

[6] Senate Report #52, 69th Cong., 1st sess., p. 37.

[7] H. R. #2, 70th Cong., p. 30.

[8] S. R. #960, 70th Cong., p. 38.

1142

because the board has failed to consider evidence not adduced before it. While an appellate court has the right and duty, if an error of law has been made, to remand a case to the board for subsequent proceedings in accordance with law, the *existing provisions of law clearly contemplate judicial, not administrative, procedure on the part of the board, and the committee can see no need of further legislation on this subject.* It is not the duty of the board to make investigations of tax cases but to decide the case on the basis of evidence properly placed before it by the commissioner and the taxpayer. [Italics supplied.]

Whether the Congress, by its enactments, succeeded in endowing this Board with jurisdiction and powers of the nature it intended may be adjudged from the judicial characterization thereof. In *Blair* v. *Oesterlein Machine Co.*, 275 U. S. 220, the Supreme Court said:

An examination of the sections creating the Board and investing it with power can leave no doubt that they were intended to confer upon it appellate powers which are judicial in character.

Later, in *Williamsport Wire Rope Co.* v. *United States*, 277 U. S. 551, the court said that under the Revenue Act of 1924 the power of the Board in reviewing determinations of the Commissioner as to the applicability of the special assessment provisions of the statute was discretionary and executive in character. Still later the court, by Mr. Chief Justice Taft, said, in *Old Colony Trust Co.* v. *Commissioner*, 279 U. S. 716:

The Board is not a court. It is an executive or administrative Board, upon the decision of which the parties are given opportunity to base a petition for review to the courts after the administrative inquiry of the Board has been had and decided.

It held further that a decision of the Board may be reviewed by the circuit courts of appeals as a controversy cognizable by those courts under the judicial article of the Constitution.

See also *Goldsmith* v. *U. S. Board of Tax Appeals*, 270 U. S. 117; *Phillips* v. *Commissioner*, 283 U. S. 589.

The pronouncements of the Supreme Court upon the subject have been the subject of reiteration and interpretation in numerous decisions of the various circuit courts of appeal, of which one of the more recent, rendered after an exhaustive consideration and accompanied by a vigorous dissenting opinion, is *Commissioner* v. *Liberty Bank & Trust Co.*, 59 Fed. (2d) 320. It was there said:

While the Board is not a court, it exercises appellate powers judicial in character. Its decision presents a case or controversy between the taxpayer and the Government so as to authorize review by the court upon the Commissioner's petition. * * * The Board exercises functions similar to those exercised by a trial court in a law case without a jury.

The character of the Board and the nature of its powers being thus judicially defined, the inquiry follows: " What authority has the

Board which would permit it to consider and act upon motions of the kind here under discussion? " It has been urged that, since the Board is a creature of statute, it has neither implied nor inherent powers, and, unlike a court as to which every intendment of law is in favor of the power to do all things necessary toward final judgment in a proceeding, its powers exist, if at all, exclusively in the terms of the statute and, if statutory authority be lacking, it must be inferred that the intention of the Congress was to deny the power. These, and similar arguments, seem conclusively answered by the decision of the Supreme Court in *Goldsmith* v. *Board*, *supra*, holding that the Board, despite the lack of express statutory authority, has the power to make rules as to persons who may practice before it and reading, *inter alia:*

Our view * * * is that so necessary is the power and so usual is it that the general words by which the Board is vested with the authority to prescribe the procedure in accordance with which its business shall be conducted include as part of the procedure rules of practice for the admission of attorneys.

The primary business of the Board is to hear and decide controversies arising between the Commissioner and the taxpayer—to determine the amount of deficiency owing or overpayment made by the taxpayer.[9] Surely, considering and acting upon motions for new trial, reconsideration, and the like, are as necessary a part of the procedure according to which that business shall be conducted as the prescribing of rules respecting the persons who shall be permitted to appear to present the controversy. Certainly, the power for the consideration of and action upon such matters is necessary, and is usual to a tribunal having similar duties and, in our opinion, it requires no stretch of implication to imbue us with that authority. In many instances beyond those cases already referred to wherein we have taken cognizance of motions of this nature, we have, without reproach from higher authority, considered and acted upon presented problems, while lacking express statutory authority so to do, in the belief that our duty of determining a petitioner's tax liability so required. We have considered and determined the constitutionality of a portion of a statute serving as a basis for a determination of deficiency. *Henry Cappellini*, 14 B. T. A. 1269; *Independent Life Ins. Co. of America*, 17 B. T. A. 757; *American Security & Trust Co.*, 24 B. T. A 334; *Lord Forres*, 25 B. T. A. 154; *Northern Trust Co., Executor*, 9 B. T. A. 96; affd., 41 Fed. (2d) 732; 283 U. S. 782.

We have reviewed the action of the Commissioner in special assessment cases, *Oesterlein Machine Co.*, 1 B. T. A. 159; affd., 275 U. S.

[9] *Green* v. *McLaughlin*, 55 Fed. (2d) 423; *American Woolen Co.* v. *White*, 56 Fed. (2d) 716; *Warren Mfg. Co.* v. *Tait*, 60 Fed. (2d) 982; *Peerless Woolen Mills*, 13 B. T. A. 1119.

220. We have ordered the substitution of parties petitioner, *Wm. I. Paulson*, 10 B. T. A. 732; *George E. Hall, Administrator*, 10 B. T. A. 847; *Charles A. Rusk et al., Executors*, 20 B. T. A. 138; affd., 53 Fed. (2d) 428. We have refused to be bound by stipulations of law, *Ohio Clover Leaf Dairy Co.*, 8 B. T. A. 1249; affd., 34 Fed. (2d) 1022; certiorari denied, 280 U. S. 588; *Walter H. Lewis*, 11 B. T. A. 334; affd., 47 Fed. (2d) 32; or by stipulations of fact if manifestly incorrect, *William Ernest Seatree*, 25 B. T. A. 396; and have disregarded a confession of error by the Commissioner when we found it to be contrary to statute, *Lucius H. Littauer*, 25 B. T. A. 21. At times, for good cause shown, we have vacated a decision, in some instances over objection of counsel and, again, at times, we have refused to do so. In view of these practices it is perhaps significant that the Revenue Act of 1926, while expressly prescribing for our use in the admission of evidence the rules obtaining in courts of equity of the District of Columbia, left the rules of practice and procedure governing the conduct of proceedings before us to our discretion and that subsequent acts likewise left this power unimpaired. Moreover, the matter of a new trial of a proceeding before this Board was directly dealt with in *Griffith* v. *Commissioner*, 50 Fed. (2d) 782, wherein the court held that a motion therefor stops the running of the time allowed by statute for appeal from our decision, and in *Bankers Pocahontas Coal Co.* v. *Commissioner*, 287 U. S. 308, wherein the court held that our denial of a motion for rehearing was not an abuse of our discretion. See also *Lexington Ice & Coal Co., supra; United States ex rel Dascomb* v. *Board*, 16 Fed. (2d) 337. We conclude, therefore, that, because it is an essential requirement of the procedure necessary to the fulfillment of our duty, to the conduct of our business, we have the authority to include as a part of the procedure in cases before us, which, by statute is placed within our discretion, such consideration of, and action upon motions as may be necessary to a just determination of the controversy.[10] It was for that reason that, after consideration of the motion by the full Board, a new trial was granted in the case at bar.

But it is further urged that we lack authority to grant a new trial in any proceeding before us wherein we have entered our decision, for the reason that it has then passed beyond our control and we become *functus officio* and without power to entertain further motions respecting the proceeding. The rule that, after the term has ended, all final judgments pass beyond the control of the rendering court, although under its control during the term, is well established

---

[10] See *Cohan* v. *Commissioner*, 39 Fed. (2d) 540; *Schultz Bread Co.*, 10 B. T. A. 268; *United States* v. *Board*, 37 Fed. (2d) 442; certiorari denied, 281 U. S. 731; *Underwood* v. *Commissioner*, 56 Fed. (2d) 67.

and needs no extended citation. *New England Furniture & Carpet Co.* v. *Willcuts*, 55 Fed. (2d) 983. Its purpose is to promote a termination of controversy; to fix a time when the trial court may be done with the case. This Board has no terms, but the time when its decisions become final is fixed by statute. (Sec. 1005, Revenue Act of 1926) Until such time arrives it seems clear that we retain control of our decisions and may, for good cause, vacate or amend them. Cf. *United States ex rel James McCandless* v. *Board*, 26 Fed. (2d) 1003. Whether, for the purpose of preventing an obvious miscarriage of justice occasioned by fraud or mistake, we may vacate a decision after the lapse of the statutory period as if upon a writ of *coram nobis*, we need not here decide.[11]

Considering petitioner's contention, so strenuously urged, that we must decide this case upon the record made at the first trial, it is apparent that petitioner confuses a matter of procedure with one of evidence. The question of whether a new trial should be granted is one of procedure, and, under the statute, our practice and procedure is to be fixed by the Board itself. The matter thus being within our sound discretion, it would seem that the new trial may be limited in scope, or may be a hearing *de novo*, as we may direct. *Bankers Pocahontas Coal Co.* v. *Burnet, supra; Great Northern Ry. Co.*, 10 B. T. A. 1347; *Frank C. Hughson*, 10 B. T. A. 242; *O'Meara* v. *Commissioner*, 34 Fed. (2d) 390; *Board, etc.* v. *United States ex rel Schultz Bread Co.*, 37 Fed. (2d) 442; and it would seem that our determination of the question, unless arbitrary, would not be subject to review, *Fitzgerald* v. *Dodson*, 58 D. C. App. 150; 26 Fed. (2d) 522; cf. *Johnson* v. *Harmon*, 94 U. S. 371; *Reamer* v. *Bernheim*, 132 U. S. 103; *Cochran* v. *Schriber*, 107 Fed. 371; the case then standing as though no previous trial had taken place, *Home Life Ins. Co.* v. *Dunn*, 19 Wall. 214; *United States* v. *Ayers*, 9 Wall. 609; *Stern* v.

---

[11] See *La Floridienne J. Buttgenbach & Co.* v. *Commissioner*, 63 Fed. (2d) 630, wherein it was held that a decision of the Board, entered in accordance with a stipulation by the parties, may be vacated at the instance of the parties to the stipulation for good cause shown. That the stipulation of deficiency was entered into through mutual mistake, that the taxpayer did not owe the tax, and that no hearing was had before the Board resulting in a determination of the case upon its merits, was not disputed. The parties joined in a motion requesting the Board to vacate its order of redetermination entered more than four years previously, and to enter an order declaring an overpayment in an agreed amount. This, the Board refused to do.

The court held that, although the passing of time had foreclosed the right of either party to appeal from the Board's decision, the Board, in its discretion, might deal further with the proceeding and that extraordinary relief against its decision might be had. It said, by Sibley, J:

"We shall not attempt to formulate any rule as to the control the Board of Tax Appeals has over its own judgments. * * * Whether the Board be treated as a court or a departmental agency with quasi-judicial functions, we are of opinion that it may in its discretion, vacate such an order as this is, reinstating the matter for hearing before it on its merits or accepting a new stipulation touching the liability."

*Wabash R. R. Co.*, 101 N. Y. S. 181; *Henderson* v. *Carbondale Coal & Coke Co.*, 140 U. S. 25.

There can be no doubt but that in the instant case the Board intended a trial *de novo*. Respondent's motion, which was granted, requested such a hearing; the subsequent motion of petitioner to submit the case upon the old record made an issue of the point, and the denial of that motion emphasized and clarified, if clarification was necessary, the Board's intention as to the nature of the further proceedings. The Member, sitting as a Division of the Board at the new trial, so interpreted the order and conducted the proceedings. Any other construction of the order would have nullified it, for the new trial would serve no purpose were petitioner permitted to put in evidence the record made at the former trial, avoiding the production of his witnesses. Nor was the new trial lightly or hastily ordered. We recognized that a new trial would entail hardship to petitioner and to respondent as well, but we found ample justification for ordering it. This case involved a serious issue of good faith and character. Fraud was charged and suspicion raised concerning the honesty of the conduct of petitioner's officers toward the Government. Moreover, an issue respecting valuation of property was raised, demanding proof, perhaps through testimony of opinion. Such matters can not safely be determined solely from a transcript; personal impressions of the witnesses on the stand are of almost essential assistance in weighing their testimony. Here the Member who saw and heard those witnesses and was to adjudge their testimony was dead. It seemed unwise, if not unfair, to attempt thereafter to determine those issues without the advantages offered by the personal appearance of the witnesses upon whose testimony the decision had to be based. Then, too, it was asserted that, due to the presiding Member's disability during trial, the record was too confused to serve as a basis for decision. We examined, to some extent, the record made at the former trial and discovered difficulties, beyond mere technical considerations of rulings upon evidence, which indicated that the record might be unreliable, and this was another factor tending to persuade us that a new trial should be granted. Of course, a new trial imposes a hardship on the parties generally and upon one of them especially. That is regrettable but not at all unusual. Frequently it happens in criminal as well as civil cases that a new trial must be had, for instance, where a jury is unable to agree upon a verdict, or is tampered with, or where a juror becomes ill, or dies, or where, for one reason or another, a mistrial is declared. Here there was no jury, but the Member whose duty it was to weigh the imponderable elements of the evidence, as would a jury, was removed by death.

Under these circumstances, and in view of the nature of the issues in the case, it seemed necessary to the Board that the hardship be imposed and the new trial ordered.

We have examined carefully the authorities upon which petitioner relies and conclude that they are not here applicable. They refer to the practice and procedure before a master and in a court of equity, and the majority of them refer to a rehearing in equity after a decree. The Board is not a court of equity; no hearing was had here before a master; no decision was rendered in this proceeding before the new trial, and our proceedings are not subject to the rules of practice and procedure obtaining in courts of equity.

The admissibility of evidence in proceedings before us is to be determined by the rules of evidence applicable in courts of equity of the District of Columbia (sec. 907 (a), Revenue Act of 1926). The District of Columbia Code (1926) provides (sec. 1061) that " in equity causes * * * the testimony of witnesses may be taken in the manner provided by the rules of the Supreme Court of the United States for practice in equity and of the Supreme Court of the District of Columbia not inconsistent therewith."

The rules of practice of the Supreme Court of the United States for courts of equity provide (Rule 46) that " in all trials in equity the testimony of witnesses shall be taken orally in open court except as otherwise provided by statute or these rules. * * * " (The exceptions refer to depositions.) Cf. *Hawks Dental Assn.* v. *Tooth Crown Co.*, 194 U. S. 303; *Ex parte Fisk*, 113 U. S. 713; *Salt Lake City* v. *Smith*, 104 Fed. 457.

The Code of the District of Columbia provides (sec. 1058) in cases where the witness lives beyond the jurisdiction, is likely to leave the United States, is infirmed or aged or sick, or for any reason the party desiring his testimony fears he may not be able to secure same at the time of the trial, his deposition may be taken, but if at the time of the trial the witness can be produced to testify in open court, the deposition shall not be read in evidence, and this is true whether the depositions are taken orally or on interrogatories and cross-interrogatories. The code further provides (sec. 1066), " if a party after having testified at a time when he was competent to do so, shall die, or become insane or otherwise incapable of testifying, his testimony may be given in evidence in any trial or hearing in relation to the same subject matter between the same parties or their legal representatives."

It appears therefore that the rules obtaining in the courts of equity of the District of Columbia as to the admissibility of secondary evidence are not materially different from the rules of evidence generally prevailing. Upon the new trial of a cause the admissibility

of evidence given at a former hearing depends not so much upon the character of the tribunal as upon the judicial character of the proceedings and the purpose for which the evidence is offered. Generally, upon a new trial of a cause, the testimony of a witness who is living, is under no disability and is within the jurisdiction, given at a former hearing, is not admissible, over objection, except for purposes of impeachment. See Wigmore on Evidence, Vol. III, sec. 1042; C. J., sec. 517. Citation of cases establishing and supporting the rule could be endless. Here, petitioner made no attempt to lay the ground for admission of the testimony, or any part thereof, taken at the first trial—made no showing toward bringing such testimony within such rule, but merely offered the previous record *in toto*. As such, it was rejected, and we think there can be no doubt that, under the rules of evidence obtaining before this Board, the motion to decide this cause upon it, or to admit it in bulk into the record made at the new trial, was properly denied.

In view of the foregoing, it is hardly necessary to discuss petitioner's contention that the former testimony should be admitted because it is a public record. Public records are admissible to show certain facts, if material, such as the fact that a hearing was had on a date certain, at a certain place, at which certain witnesses were heard, and other facts of like import, but, notwithstanding the fact that records of proceedings before this Board are public records (and are open to public inspection) they are no more admissible as evidence on a retrial of the cause without the laying of a proper foundation therefor than would be any of the other public records with which the files of the various departments of the Government are filled. Petitioner has laid no such foundation; consequently, we can not consider as a part of this record the evidence presented at the former trial.

With respect to the issue of fraud, we have no hesitancy in sustaining the imposition of penalties on that account, for the evidence as to manipulations by petitioner's officials designed to conceal taxable income is beyond dispute. Petitioner urges that its subsequent, voluntary filing of amended statements and payment of the greater amount of taxes disclosed thereby should serve to mitigate the charge of fraud and excuse it from the statutory penalties. The matter of mitigation of a fraud charge is not in our hands, and we may not pass upon it. Our duty is plain; if respondent alleges fraud and submits evidence sufficient to prove it, we have no alternative but to sustain the penalty which the statute imposes. *L. Schepp Co.*, 25 B. T. A. 419.

However, it is not clear to us that respondent has computed the penalties in accordance with section 250 (b), Revenue Acts of 1918

and 1921. The correct amounts thereof may be determined upon settlement.

Without extended recitation of the detailed evidence introduced by respondent respecting his computation of petitioner's inventories for each of the several years involved, we have set out in our findings our determinations of the correct inventories. The testimony on this matter was voluminous and the changes to be made as contended by respondent over the amounts disclosed by petitioner's returns were taken up item by item. The proof shows clearly that petitioner's inventories as reported were erroneous. We accept the respondent's proof as to what they should be, for, while cross-examination of respondent's witnesses indicated the *possibility* of error in some items in his determinations of his proposed inventory adjustments, it did not show the *existence* of error, and, on the whole record, we are convinced that respondent has maintained the burden of proof of his affirmative allegations.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*